CASE 102—PETITION EQUITY—FEBRUARY 6.

## Reynolds' Adm'r v. Reynolds.

APPEAL FROM MASON CIRCUIT COURT.

1. GIFTS.—Where the wife directed the husband, out of the proceeds of her land in his possession, to pay to their daughter a certain sum, for which the husband executed to the daughter his note instead of paying her the money, the gift to the daughter was complete and the note is a valid claim against the estate of her father, he being dead.

2. GUARDIAN AND WARD—FAILURE OF FATHER TO CLAIM CREDITS IN SETTLEMENT AS GUARDIAN.—It is the duty of a father to educate his child, and when he holds as guardian for the child a sum devised for the child's education, he is not required to charge that fund with the entire burden of educating the child, it being his province, in the settlement of his accounts as guardian, to say what credits he will

Reynolds' Adm'r v. Reynolds.

claim.   And where the child, after his death, asserts a claim against his estate for a balance shown to be due by a settlement made by him as guardian, his representatives will not be allowed to claim other credits than those allowed in the settlement.   Nor will the chancellor inquire, after the lapse of many years from the date of the settlement, whether or not the father was allowed interest on the sums paid out.

3. PARENT AND CHILD—IMPLIED CONTRACT TO PAY CHILD FOR SERVICES. —The law does not imply a promise by the father to pay his daughter for services rendered by her in the home even after she arrives at age, and the fact that he has recognized the value of the services and declared that she should be well paid is not sufficient to establish a contract.

E. L. WORTHINGTON, J. G. HICKMAN FOR APPELLANTS.

1. As the plaintiff alleges that the note for $500.00 was given for money borrowed from her by her father she can not recover except upon proof of the particular consideration alleged. (James v. Hayden's Adm'r, 10 Ky. Law Rep., 534; Howard v. Cornelison, 5 Ky. Law Rep., 919; Boone v. Shackleford, 4 Bibb, 68; Cutter v. Reynolds, 8 B. M., 598; Bullitt v. Ralston, 1 A. K. Mar., 531; Steadman v. Guthrie, 4 Met., 152.)

2. The evidence does not establish a gift of the $500.00 by the mother to the daughter.   An intention to give, though evidenced by a writing and accompanied with a belief that a gift has been made, is not sufficient without some sort of delivery of the subject of the gift. (Butler v. Scofield, 4 J. J. Mar., 139; Duncan v. Duncan, 5 Litt., 12; Walsh's Appeal, 9 Am. St. Rep., 177; 2 Kent's Comm., 439; 8 Am. and Eng. Ency. of Law, 1318; 4 Kent, 438; 1 Parsons on Contracts, 234, 235.)

The law will not establish as a trust what the parties intended as a gift. (Young v. Young, 80 N. Y., 422; s. c., 36 Am. Rep., 634; 2 Pom. Eq., sec. 997 and notes.)

The gift of the maker's own note is the delivery of a promise only and not of the thing promised, and upon the death of the maker, leaving the promise unfulfilled, the gift fails. (Starr v. Starr, 9 Ohio St., 74.)

3. The appellee is not entitled to recover anything on the guardianship claim, coming up, as it does, in such a questionable shape after it has slept through so many years.   Especially is this so in view of the subsequent execution of the $500.00 note, which is presumptive evidence that all open and outstanding accounts between the parties were then settled. (Lawhorn v. Carter, 11 Bush, 8.)

4. In all cases where compensation is claimed by a child for services rendered for the parent the law will not imply a promise.   A contract must be established by evidence that is direct, positive, express and unambiguous. (Wood on Master and Servant, 115; Hall v. Finch,

Reynolds' Adm'r v. Reynolds.

29 Wis., 278; s. c., 9 Am. Rep., 559; Lynn v. Lynn, 29 Pa. St., 869;. Poorman v. Kilgore, 67 Am. Dec., 428; 1 Thompson on Trials, sec. 691; Scott v. Cook, 4 Mon., 264; Paul v. Rogers, 5 Mon., 167; Zimmerman v. Zimmerman, 129 Pa. St., 229; 15 Am. St. Rep., 720; Leidig v. Coover, 47 Pa. St., 534; Candor's Appeal, 5 Watts & S.,513;. Hertzog v. Hertzog, 29 Pa. St., 465; Mosletter's Appeal, 30 Pa. St.,. 473; Hack v. Stewart, 8 Pa. St., 213; Ulrich v. Arnold, 120 Pa. St., 170; Dodson v. McAdams, 96 N. C., 149; s. c., 60 Am. Rep., 408; Fitch v. Peckham, 16 Vt., 150; Bash v. Bash, 9 Pa. St., 260; Prickett v. Prickett, 20 N. J. Eq., 478; Schwartz v. Hazlett, 8 Cal., 118; Heck v. Heck, 10 Ky. Law Rep., 281; Hall v. Howard, 33 Am. Dec.,. 115; Starr v. Starr, 9 Ohio St., 74.)

GARRETT S. WALL, T. C. CAMPBELL OF COUNSEL ON SAME SIDE. COCHRAN & SON, EDWARD W. HINES FOR APPELLEE.

1. While, as a general rule, delivery is essential to a gift of personal property, yet where the property, which is the subject of the gift, is in the custody of a third person, a delivery of the subject of the gift by the donor to the donee is not necessary. It is sufficient that the donor expresses the purpose that the donee shall have the property and that the third person in pursuance thereof attorns to the donee and agrees thereafter to hold the property for him. (Sutherland v. Sutherland, 5 Bush, 593; Stephenson v. King, 81 Ky., 425; Pollock & Wright on Possession, p. 73; Goldts v. Rose, 17 C. B., 229; Farnia v. Home, 16 M. & W., 119; Castle v. Sworder, 6 H. & W., 828.)

2. Where the gift by the donor is accompanied by an agreement on his part thereafter to hold the subject of the gift for the donee, as his agent or bailee, it is a valid gift without any delivery or change of possession of the goods. being what is technically termed a declaration of trust. (Bispham's Principles of Equity, secs. 66, 67; Morgan v. Malleson, L. R., 10 Eq., 475; Crawford's Appeal, 11 P. F. Smith (Pa.), 52; s. c., 100 Am. Dec.; Gerrish v. New Bedford Inst. for Savings, 128 Mass., 159; Blake v. Jones, 1 Bailey Eq. (S. C.), 141; s. c., 21 Am. Dec., 530; Williamson v. Yager, 91 Ky.)

3. The evidence shows that the guardianship claim was never paid. Whatever presumptive force may be given to the execution of the $500.00 note is rebutted by the other evidence in the record.

4. Even conceding that the relation of the parties raises a presumption that the services rendered by appellee to her father were gratuitous, that presumption is rebutted by circumstances showing that the services were rendered in the expectation by one of receiving and by the other of making compensation therefor. (Guild v. Guild, 15 Pick., 180; Hand v. Lain, 74 N. C., 552; Williams v. Barnes, 3 Dev. (N. C.), 348; article entitled, "Payment of Services," etc., 26 Cent. L. J., 51; McCormick v. McCormick, 28 N. E., 122; Weir v. Weir, 3 B. M., 645; Engleman v. Engleman, 1 Dana, 438.)

5. Sums paid by the decedent in satisfaction of notes upon which he was surety for his sons were properly charged to the sons as advancements. The fact that the decedent never attempted to collect these sums from his sons shows his intention to treat them as advancements and not as debts. (Sadler v. Huffheimer, &c., 11 Ky. Law Rep., 670.)

WADSWORTH & SON OF COUNSEL ON SAME SIDE.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The record in this case is so voluminous, by reason of the mass of irrelevant and incompetent testimony found in it, as to require exhaustive briefs in the discussion of the family history of the litigants. It is an unfortunate domestic trouble, and, without tracing its origin to those responsible for the litigation, we will proceed at once to determine the questions involved, of which this court should take cognizance.

G. G. Reynolds died intestate in the year 1885. He left his widow and several children and grandchildren surviving him.

Ella Reynolds, a daughter, brought this action against the administrator and heirs for a settlement of the estate and for the purpose of ascertaining the advancements made by the intestate to his children. The daughter and plaintiff in the action, appellee here, claims that her father died indebted to her in various sums.

One of the claims is evidenced by a promissory note of the intestate executed to his daughter for five hundred dollars, with interest from the 18th of February, 1884. The second claim is for eight hundred and thirty-seven dollars and eleven cents, with interest from April 9, 1871, balance due the daughter on a settlement by her father of his accounts as statutory guardian. The third claim is for three thousand five hundred dollars, services rendered by the daughter to her family after she became of age,

for about fourteen years. These several claims are contested by the brothers and the administrators.

The court below allowed the first and second claims, and allowed on the claim for services the sum of five hundred dollars. We have no difficulty in sustaining the judgment as to the claim of five hundred dollars, for which the note was executed. That it was executed by the father to the daughter is not questioned, but the contention is, that there was no consideration for it, and, if a gift, the money for which it was executed was never delivered to the daughter. In other words, that the gift was never executed, and the money in fact belonged to the father.

The mother of the plaintiff owned a tract of land that was sold by herself and husband, and when the money was paid the mother gave to one of the sons five hundred dollars of the money, and requested her husband to give five hundred dollars of it to the daughter. The money was in the father's possession at the time, as he seems to have collected it when this distribution was had. The daughter had no use for it, and the father gave to the daughter his note for the money. What reason is there for depriving the wife of the intestate of disposing of the proceeds of her own land by the consent of her husband? His having possession of the money can make no difference. The husband has consummated the wishes of the wife by executing the note, and there is no rule of law or equity that would take it from her. The moment the note was executed and delivered, which seems to have been done at the time the first purchase-money note was collected, the father of the plaintiff became indebted to her in the sum mentioned. Suppose, as is urged by

the defense, the husband had the money in his own pocket—the proceeds of the sale of this land—it was then not necessary there should have been an actual delivery of the money to the daughter by him and then a reloaning back to the father. He says to the mother or the daughter, I will execute to my child my note for the money, as she has no immediate use for it, and does in fact execute and deliver to her the paper. It then becomes valid and binding on all the parties, and the father, recognizing his liability to the daughter, in a conversation with his brother not long prior to his death, spoke of this note and his purpose to pay it. The statement made by the mother that the one thousand dollars given the daughter after her husband's death was based on the belief that she had never received the five hundred dollars, and that belief induced by the representations of the daughter, it seems to us was an afterthought. The note for five hundred dollars was exhibited to the appraisers or the administrators before this money was advanced or given by the mother, and the daughter's statement as to the conversation with her mother is corroborated by all the circumstances connected with the case. It was easy for the old lady in her advanced years, and after she had become hostile to her daughter, by reason of this litigation, to imagine that the one thousand dollars was all the daughter was entitled to from her estate, and to prevent the recovery of a claim she doubtless thought ought not to be paid.

That this daughter contributed much to the comfort and happiness of both her father and mother in their declining years is shown by all the testimony, save those directly interested in this litigation. She was not only

kind and affectionate to her parents, but took charge of
the household affairs.    Her mother was afflicted with
rheumatism and unable to walk or exert herself, and all
the labor of house-keeping, connected with the making
of the clothing for both her father and mother, devolved
on her, and this record shows a devotion to her family by
this daughter in administering to all their wants, that is
seldom witnessed, and no doubt induced the mother to
give to this daughter the one thousand dollars after the
death of the father and husband.    The chancellor prop-
erly allowed this claim.

As to the claim of a balance due on the settlement of
the father's accounts as guardian, the record speaks for
itself.    The settlement shows the indebtedness, and the
effort to diminish the amount, by showing at this late
day that the father made larger expenditures than he is
credited by, will not avail.    It was the duty of the father
to educate his child, and his province, when he settled his
accounts, to claim or disclaim credits, and it is evident he
intended this as a full settlement as between himself and
daughter.    The money that passed to his hands as
guardian had been devised to his daughter by her uncle
for purposes of education, still the father was not required
to expend it all in that way, and if he saw proper to
make this devise to his daughter pay only its proportion
of the burden, it was his right and duty to do so.    The
father was a man of means, although he subsequently
became involved, still the obligation on him to provide
means for the education of his daughter existed, and his
own settlement is the best evidence of what expenditures
he proposed to charge her with, and whether allowed
interest or not on what he had paid out, is not a question

to be raised at this late day. The amount has never been paid, and the proof fails to show its receipt by the appellee in any way.

As to the claim for services rendered the family after arriving at age, we are disposed to adjudge no allowance should be made. That she performed services valuable in their ' character, and that deserve compensation if it could be given, must be conceded, but if this daughter or the children of any parents were permitted to claim compensation on such facts as are here presented, then the question would constantly arise between them as to the merits of their several claims, and the obligation on the parent to pay each child claiming to have contributed more than another, and all enjoying the comforts, the support and the enjoyments of the same parental home. If a stranger, the law would imply a promise to pay for such services as is shown to have been rendered by the appellee in this case. It is shown the intestate said more than once that she should be well paid, but there is no evidence of any express contract to pay, or any facts that would constitute, or are equivalent to, such an agreement. We are not inclined to concur in the doctrine that after the child arrives at age the law raises a promise to pay for such services, although some of the authorities go to that extent. In this case the children, save the appellee, had left the parental roof, and she was mistress of the household. She had charge of the servants, controlled all the affairs about the home, entertained her company, dressed as was suitable for one in her position in life, and, while she assumed the burden, there went with it many of the pleasures as well as profits resulting from the position she occupied. The filial devotion of this plain-

tiff to her parents is to be admired, and whatever may be said, and truly said, of her real worth, still if a precedent should be established by which the mere declaration of the parent, *that his child should be well paid for her services,* and she deserved pay, and he intended to provide for her, is to be regarded as a contract, or as evidence sufficient upon which to infer that such a contract existed, then almost every child could make out a case against parents for services rendered after arriving at age, and in families with many children would result, in almost every instance after the death of parents, in litigation and strife.

In Zimmerman v. Zimmerman, 129 Pa. State Rep., 229, the son instituted an action for his services, and the substance of the testimony was, that the deceased father said repeatedly in his lifetime, *that if the plaintiff would take care of him he should be well paid.* Held, that under such a state of case no recovery could be had, and the court, referring to the case of Leidig v. Coover, 47 Pa. St., 534, said, in that case it was adjudged that the declaration of the deceased *that his daughter should be paid for what she worked* over age, was not sufficient to establish a contract.

In Dodson v. McAdams, 60 Am. Rep., 408 (96 N. C., 149),the granddaughter sued for services, and it was shown that the testator said she was a good girl, and should be paid for her work. The recovery was denied. The mere declarations of gratitude, expressed more than once by the intestate as to his purpose to pay his daughter, do not, and ought not to, evidence the existence of any agreement, or be held sufficient to establish a case from which a promise to pay should be implied. The testimony of the appellee, if admitted as to what her father

said, would not change the result, and courts ought to be well satisfied before exacting payment for services rendered the intestate by his children, that a contract existed, or such facts and circumstances as would necessarily lead to such a conclusion.

As to the charge of advancements made to Charles, Frank, and James T. Reynolds, it appears that the father was the surety on their notes; that he paid them off for his sons. They had no estate. He never treated them as debts, as the testimony of George Reynolds, his brother, shows, and we perceive no reason why they should not be charged to them in this settlement.

The error for which this case is reversed, is in the allowance to the appellee of five hundred dollars for her services. This ought not to have been allowed. The judgment is reversed with directions to disallow that claim, and for no other purpose; it is affirmed in every other respect. The appellee will pay one-half the costs in this court, and the estate, through its administrators, the other half. This is done because the greater part of the record consists in the proof touching the services of the appellee, for which no judgment should have been rendered.