CASE 23.—SUIT BY CHARLES BLANFORD AS ADMINISTRA-
        TOR OF RILEY DOWELL, DECEASED, AND
        OTHERS, AGAINST MILT DOWELL AND OTHERS.
        —February 23, 1910.

## Dowell, &c. v. Dowell's Admr, &c.

Appeal from Breckinridge Circuit Court.

WEED S. CHELF, Judge.

Judgment for plaintiffs, defendants appeal.—Af-
firmed.

1.  Work and Labor—Services—Relationship—Parent and Child.
    —The law will not imply a contract to compensate a child
    for services rendered his parent, especially where the child
    remains at home,. and the services are such as the affection
    commonly entertained by a child would have prompted the
    child to render.
2.  Executors and Administrators—Claims Against Estate.—Ex-
    pressions of decedent's gratitude for what claimants had
    done for him, and of a purpose to compensate them, by
    leaving them his farm at his death, did not amount to an
    express promise to pay them for their services, nor were
    they sufficient as an unqualified acknowledgment of an in-
    debtedness on his part therefor.
3.  Limitation of Actions—Removal of Bar—Acknowledgment of
    Indebtedness.—In order to take a case out of the statute
    of limitations, an express acknowledgment of the debt, as
    a debt due at that time (coupled with the original consid-
    eration), or an express promise to pay the debt made to
    the creditor, or some one acting for him,  and not to a
    stranger, must be proved to have been made within the time
    prescribed by the statute.
4.  Descent  and  Distribution—Claims—Estoppel.—After  de-
    cedent's death it was agreed between claimants and their
    sisters that, in consideration of the claims for services and
    advances to decedent, claimants should receive the larger
    and more valuable portion of decedent's land, which was
    thereupon distributed to them in accordance with the agree-
    ment; claimants to pay $800 for the share of an imbecile

sister, and to be relieved from any obligation for the sister's future support. Held, that by such contract claimants released and were estopped to assert their claims against the estate for services.

5.  Insane Persons—Contracts—Deeds—Validity.—The deed of an insane person is voidable only, and not void.

6.  Insane Persons—Deeds—Conveyance of Interest in Estate—Validity.—Where an insane heir conveyed her interest in the estate to claimants in consideration of their agreement to pay $800, to be deposited in trust for her support, and such deed was executed before the grantor was adjudged of unsound mind, and was not only executed in good faith, but was favorable to her, it could not be repudiated by the claimants on account of her alleged insanity.

7.  Appeal and Error—Cross-Appeal—Decree.—Where, in a suit for the settlement of a decedent's estate, certain claims were disallowed, and a conveyance of an insane heir's share in certain real estate to the claimants in consideration of $800, which had not been paid, was sustained, but no judgment was rendered against the claimants for such sum, judgment therefor could not be directed on an appeal, in the absence of a cross-appeal by such insane heir and her committee.

MURRAY & MURRAY for appellants.

CLAUDE MERCER, N. C. McMERCER and R. L. GREENE for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Riley Dowell died in Breckinridge county in 1905 intestate, leaving a small personal estate and two tracts of land, one of 70, and the other of 109, acres. The appellee Charles Blanford was appointed and duly qualified as administrator of the decedent's estate. The decedent left surviving him eight children, viz., the appellants, Milt Dowell and Abe Dowell, and the appellees, Kate Adams, wife of James Adams, Nancy Brown, wife of Milton Brown, Mattie Galloway, wife of John Galloway, Polly Snyder, wife of Horace Snyder, Susan Hardaway, wife of W. G.

Hardaway, and Bettie Dowell, the latter being a person of feeble intellect, incapable of contracting or caring for herself. Under the statutes of descent and distribution the children named as heirs at law of Riley Dowell, deceased, were entitled to share equally in his estate, real and personal, each taking an eighth thereof, after the payment of his debts. But as the appellants, Milt and Abe Dowell, had lived with their father, run his farm, paid some of his debts and supported him for several years prior to his death, they claimed, and were accorded by their sisters a larger share each of the landed estate than was demanded by the latter for themselves.

So, on January 4, 1906, which was but a short time after the father's death, the heirs got together and mutually agreed that appellants, Milt and Abe Dowell, should together take and own the larger and far more valuable 109-acre tract of land, and that the appellees, their sisters, exclusive of Bettie Dowell, should together take and own the 70-acre tract. It was further agreed by the parties that appellants would pay to their sister Bettie Dowell $800 for her interest in the real estate left by Riley Dowell, deceased. Pursuant to this agreement, Bettie Dowell, by deed of general warranty, conveyed to her brothers and sisters her undivided one-eighth interest in the lands left by Riley Dowell, and at the same time her sisters, together with their husbands, respectively, executed and delivered to appellants, Milt Dowell and Abe Dowell, a deed of general warranty, conveying to them jointly their entire undivided interest each in the 109-acre tract of land, and the latter, with their wives, by a like deed conveyed to their sisters, except Bettie Dowell, jointly their entire interest each in the 70-acre tract. These deeds were at

once duly recorded in the office of the clerk of the
Breckinridge county court.

On January 12, 1906, appellants and appellees, by
another agreement, then reduced to writing and sign-
ed by the parties, arranged that the money appel-
lants were to pay Bettie Dowell for her interest in
the decedent's lands should be placed in the hands
of Charles Blanford as her trustee, to be kept se-
curely invested by him for her sole use and benefit,
in order that the interest thereon, and only so much
of the principal as might be necessary, might be
used to provide her with "suitable raiment and
medical attention. The writing also provided that ap-
pellees, the sisters of Bettie Dowell, should severally
"assume the sole care and protection of Bettie Do-
well, furnishing her as good board and lodging as
they provide for their own families, relieving their
brothers, Milton Dowell and A. B. Dowell, parties of
the second part, of all responsibility and care of her
whatever." The writing contains the further pro-
vision that in the event the sisters of Bettie Dowell
faithfully comply with their undertaking to care for,
protect, board, and lodge her, all that may remain
at her death of the money held by Blanford shall be
equally divided among them, but if any of the sis-
ters fail to perform the agreement, she or they shall
receive no part of what may remain in Blanford's
hands after the death of Bettie Dowell. Although
the deed from Bettie Dowell to her brothers and sis-
ters acknowledges the payment by the former of the
$800 she was to receive for her interest in her fa-
ther's estate, it was never in fact paid by them, nor
did it or any other amount ever go into the hands of
Charles Blanford for Bettie Dowell, notwithstanding
which it seems to be admitted that appellees, her sis-

ters, have cared for and supported her as they obligated themselves, by the writing of January 12, 1906, to do.

On January 30, 1906, the appellee Charles Blanford, as administrator, by an action in equity instituted in the court below, asked a settlement of his accounts, and to that end made the heirs at law of the decedent, and such of the latter's creditors as were known to him, defendants. At the appearance term of the court the appellants, Milt Dowell and Abe Dowell, filed separate   answers and counterclaims, in which each claimed to be a creditor of the estate to the amount of $500, for labor and services alleged to have been rendered the decedent during the five years next before his death, at his request and upon his promise to pay therefor.

At the succeeding term of the court appellants filed a joint answer, which was made a counterclaim against the administrator and cross-petition against their sisters. In this pleading appellants alleged a further claim of $9,887.35 against the decedent's estate, made up of $8,232.62 of purchase money, including principal and interest, it was alleged they paid for their father in satisfaction of certain notes secured by a vendor's lien upon the lands he owned at the time of his death, and the further sum of $1,654.73 they claim to have paid in satisfaction of other notes and demands owing by him prior to his death, including $650, the cost of erecting a barn and small house on his land; it being also alleged that they paid for their father the several notes and demands constituting the total of $9,887.35, at his request and upon his verbal promise made when appellants discharged them, and again within five years prior to his death, to repay same by deeding or willing them

all of his lands, which he failed to do.  The claims asserted by appellants against the estate by the joint answer, counterclaim, and cross-petition, and those asserted by them in the first, or original, answers and counterclaims, amount in the aggregate to $10,887.35.  The administrator and the sisters of appellants by appropriate pleadings controverted the claims asserted against the estate of the decedent by appellants and averred in substance that the alleged services for which they claimed $500 each were rendered gratuitously and in return for their use of decedent's lands; that the several notes and demands constituting appellants' claim of $9,887.35, if paid by them for the decedent at all, which was denied, was without a request from decedent that they do so, or promise on his part to repay them; that the alleged agreement of the decedent to compensate appellants for what they claim to have paid for him by conveying or devising them his lands, if made at all, which was denied, was within the statute of frauds and unenforcable; and that appellants' demands, as well as the various notes and claims included in them, were barred by the statute of limitations, which was duly pleaded.

It was further alleged by appellees that at the time of the agreed division of the decedent's lands between appellants and the other heirs at law, and as a part of the consideration for same, appellants relinquished any and all claims and demands they had or held against the decedent's estate, and in satisfaction thereof demanded and accepted the 109 acres of land they received in the division, and were thereby estopped to assert or recover such claims, or any part thereof, against the decedent's estate, which estoppel was formally pleaded.  After the filing by appellants

of necessary additional pleadings controverting the affirmative matter contained in those of appellees, the parties took proof, and following a submission of the case the circuit court rendered judgment rejecting and dismissing appellants' demands, and from that judgment they have appealed.

We deem it unnecessary to consider the various motions and demurrers made and filed by either party, as we have discovered no material error in any ruling of the court thereon, and find that the issues presented by the pleadings are substantially as we have indicated.

We do not think appellants' demands of $500 each for labor and services claimed to have been rendered the decedent within the five years preceding his death are sufficiently sustained by the evidence. The services were of a character and the relationship of the parties such as to create the presumption that they were rendered gratuitously. To overcome this presumption it was necessary for appellants to prove an express promise made them by the decedent to pay for the services. In other words, the law will not imply a contract to compensate for services rendered by one person to another when the parties stand in the relationship of parent and child, and especially is this true where the child resides at the home of the parent, and the services are such as the affection commonly entertained by a child would have required or prompted the child to render. Price v. Prices' Exor., 101 Ky. 28, 39 S. W. 429; Reynolds' Admr. v. Reynolds, 92 Ky. 556, 18 S. W. 517; Wayman v. Wayman, 22 S. W. 557, 15 Ky. Law Rep. 374.

We are aware that several witnesses introduced in appellants' behalf testified to having heard the de-

cedent express his gratitude for what appellants had done for him, and a purpose to compensate them by leaving them the farm at his death, but these statements did not amount to an express promise on his part to pay for such services as appellants may have rendered him, nor were they sufficient to constitute an unqualified acknowledgement of an indebtedness on his part for such services. Besides, it is clear from the evidence that appellants for a long while were in possession of the decedent's farm cultivating it and receiving the profits thereof free of rent or charge, and if presumptions are to be indulged, it is reasonable to suppose that for such services as they rendered the decedent, such free use of the farm afforded them ample compensation.

As to the various notes and other demands appellants claim to have paid for the decedent during the many years of their residence with him, it is sufficient to say that the whole thereof, except some small items amounting to about $100, seem to be barred by the statute of limitations. It is likewise true that declarations from the decedent showing his knowledge of the assumption and payment by appellants of some of these debts, and indicating an expectation on his part to reimburse appellants by deeding or willing them the farm, were testified to by several persons according to whose recollections some of the declarations were made within five years of the institution of this action, but none of this testimony was sufficient to establish a direct promise to appellants from the decedent that he would repay them these debts, or an unqualified acknowledgement of the decedent's liability therefor, and in order to remove the bar interposed by the statute "An express promise to pay, or an acknowledgement of the

debt as a debt due at the time, coupled with the original consideration must have been made within the time limited by the statute for bringing the action." Gray v. Lawridge, 2 Bibb. 284; French v. Frazier, 7 J. J. Marsh. 425. It is also the law that an acknowledgment, in order to take the case out of the statute, must be made to the creditor, or some one acting for him, and not to a stranger. Trousdale v. Anderson, 9 Bush 276; Hargis v. Sewell, 87 Ky. 63, 7 S. W. 557, 9 Ky. Law Rep. 920.

We are not unmindful of what appellants' learned counsel call the equities existing in their clients' behalf, and cases may be found in which this court has held that, although a parol sale of and promise to convey land cannot be enforced, the purchaser, if in possession will not be compelled to surrender the land until repaid the purchase money he may have paid thereon, with interest to be set off by rents, and the amount of such increase, if any, in the vendible value of the land as may have resulted from improvements he placed thereon, and that in such cases the purchaser has commonly been given a lien upon the land to make him whole; but the alleged undertaking of the decedent to indemnify appellants for their alleged payment of the purchase money due upon the land, and other demands they claim he was owing by deeding or devising them his land, was not, after they were barred by the statute of limitations, satisfactorily established by the evidence as a direct promise made to appellants by the decedent that he would repay them the same, or an unqualified acknowledgement to them, or any agent of theirs, that he was indebted to them therefor. But if not certain that appellants' claims are barred by the statute of limitations our decision must nevertheless go

against them; for in our opinion they are estopped
to urge a recovery of the claims, or any part thereof,
by the contract and division of lands made with their
sisters, the appellees, January 4, 1906.

It is, however, contended by appellants that the
demands they assert against the decedent's estate
were not considered or settled at that time, and that
if the division of the lands could be held to have
operated as a settlement of their demands against
the estate, their agreeing to and consummating it was
a mistake on their part, both of law and fact. We do
not find this contention sustained by the proof. It
is true appellants, in rebuttal, both so testified, but
they were contradicted by their five sisters, the ap-
pellees Polly Snyder, Sue Hardaway, Mattie Gallo-
way, Nancy Brown, and Kate Adams; also by the
appellees Charles Blanford, C. C. Smith and J. L.
Henry, all of whom testified that they were present
when the land was divided and deeds made, and that
appellants then agreed, in consideration of their ob-
taining in the division the far more valuable and
larger quantity of the decedent's land, viz., 109 of
of the 179 acres, that they would surrender and re-
gard as settled any and all claims they had or held
against the decedent's estate, and that they would
pay their imbecile sister Bettie Dowell, for her inter-
est in the decedent's lands, $800, appellees the five
sisters undertaking then and by the writing of Janu-
ary 12, 1906, to relieve appellants of the obligation
of contributing in any measure to the support of
Bettie Dowell, and themselves assuming the entire
burden of furnishing her such care and "as good
board and lodging as they provide for their own
families," leaving her to be provided with "suitable
raiment and medical attention" out of the interest of

the $800, and so much of the principal as might be found necessary for that purpose.

Surely there was some potent reason for appellants obtaining such an advantage in the division of the decedent's lands. According to the weight of the evidence the 109-acre tract received by appellants in the division is easily worth $2,880, and the 70-acre tract received by appellees their five sisters but $1,470. At these figures appellants, after assuming the payment to their sister Bettie of $800 for her interest in the decedent's landed estate, each got $1,040 worth of land and relief from the burden of Bettie's support, whereas, their five remaining sisters got only $280 worth of land each, and obligated themselves to care for, board, and clothe Bettie. Manifestly these facts strongly support the testimony of appellees and their witnesses that whatever claims or demands appellants had or held against the decedent were paid them in land and settled at the time of and in the division of the decedent's lands.

It is further contended by appellants that Bettie Dowell was incompetent to contract at the time she conveyed to them and to her five sisters her interest in the lands left by the decedent, that therefore the entire transaction involving the division of the lands was invalid, and that the several deeds resulting therefrom are void. This contention can not be sustained, for it has repeatedly been held by this court that the contract of a person of unsound mind, like that of an infant, is not void, but voidable only. Logan, &c., v. Vanarsdall, &c., 86 S. W. 981, 27 Ky. Law Rep. 822; Arnett's Com. v. Owens, 65 S. W. 151, 23 Ky. Law Rep. 1410.

Perhaps the leading case in this state on the subject in question is that of Breckinridge's Heirs v.

Ormby, 1 J. J. Marsh. 236, 19 Am. Dec. 71, in the
opinion of which it was in substance declared that
the weight of authority is in favor of the validity of
deeds of persons in fact insane, but not so adjudicat-
ed, and that such deeds are not void, but are voidable
only at the instance of the person of unsound mind,
his committee, or after his death at the suit of his
heirs and cannot be avoided by a sane person, party
to the deed, on the ground of the insanity of the
other contracting party. In Logan, &c., v. Vanars-
dall, supra, it was held that though a grantor had
properly been adjudged a lunatic prior to the exe-
cution of the deed to the grantee, that fact, though
conclusive evidence that such was his condition at
the time of the inquest, was only prima facie evi-
dence of his condition at the time of the sale and
conveyance to the grantee, and, being a mere pre-
sumption it could be repelled by proof.    Clark's
Exor. v. Trail's Admrs., 1 Metc. 35.

It appears from the record in the case before us
that Bettie Dowell was not adjudged a person of un-
sound mind until after she had conveyed to her
brothers and sisters her interest in their father's
lands, which was when the division of the lands was
made.  It is to be assumed that the brothers and sis-
ters at the time of the division of the lands believed
her incompetent to care for herself or her estate;
hence they made, as we have seen, provision for her
support.  But though unequal to the task of support-
ing herself or of managing her property, she may
nevertheless have then had mental capacity to con-
tract, and it is to be presumed that the brothers
and sisters believed her possessed of such capacity,
as they contracted with her and accepted the deed
she made.  At any rate, they will not be allowed to

disregard or attack the contract they made with her, and with each other for her benefit, nor can they, in case of her death, do so as her heirs at law.

Bettie Dowell and her committee are parties to this action, and both insisting that the contract as to her shall stand, and in good faith be carried out. As by that contract she got more for her interest in the father's landed estate than would have fallen to her share in the absence of the contract, it is apparent that, instead of being injured, she will be benefited by its enforcement, and in this view of the matter the chancellor did not err in the judgment rendered. Indeed, he might have gone further, and by his judgment approved the contract and resulting division of the lands.

We do not gather from the record that the division of lands and settlement between appellants and appellees affected in any way their right to share as heirs at law equally in whatever personal estate was left by the decedent; hence we have not considered or discussed their rights with respect thereto, except to the extent of holding that the several claims appellants are attempting to assert against the decedent's estate should not be paid out of either the personalty or realty, because they were adjusted and settled in the division made by them with appellees of the real estate.

Counsel for appellees complain that the circuit court omitted to enter judgment requiring appellants to pay to the committee of Bettie Dowell the $800 they obligated themselves to pay for her interest in the lands. As all the parties were before the court, such judgment might properly have been rendered by the court, and may yet be entered; but, as a cross-appeal has not been prosecuted by

Bettie Dowell and her committee, this court should not now direct the entering of a judgment as asked.

Being of the opinion that the judgment appealed from properly determined the right of the parties it is hereby affirmed.