## Wathens, et al. v. Skaggs, et al.

(Decided December 15, 1914.)

### Appeal from Larue Circuit Court.

1. Insane Persons—Property and Conveyances.—In this State the deed of a person of unsound mind is not void but merely voidable.
2. Deeds—Validity—Capacity of Grantor.—To constitute mental incapacity invalidating his deed, the grantor must have been incapable of comprehending or understanding the subject of the contract, its nature and probable consequences. If he has sufficient mental capacity to know and understand the nature, meaning and effect of his act, then mere weakness of intellect will not invalidate his conveyance unless coupled with inadequacy of consideration, undue influence or other inequitable circumstances.
3. Cancellation of Instruments—Proceedings and Relief—Weight and Sufficiency of Evidence.—To overcome the presumption that the grantor of land is possessed of sufficient mental capacity to give effect to his conveyance, there must be more than a mere equilibrium of proof. An inquest upon which such grantor is found to be of unsound mind is conclusive evidence of his mental condition only at the time of such inquest. If the inquest is had before the execution of the deed, it is only prima facie evidence of mental incapacity and the presumption thereby raised may be repelled by proof.

O. M. MATHER and CLAUDE HUDGINS for appellants.

JONES & GRAHAM and WILLIAMS & HANDLEY for appellees.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

In November, 1909, Joseph H. Wathen and Sarah N. Wathen, his wife, the former being about eighty-eight years of age, and the latter about seventy, resided upon a farm in Larue county, comprising about one hundred acres.

They had previously conveyed this farm to their daughter, Martha Puryear, in consideration of her undertaking and agreement to support and maintain them during their respective lifetimes. She, however, had repudiated or abandoned her contract, and had executed

an attempted assignment thereof and of her rights thereunder, to one Luther Holland, who married her daughter. Luther Holland and his wife, a granddaughter of the Wathens, were living with the old couple, and this arrangement was not at all to their liking.

During the time when their daughter, Martha Puryear, had lived with them and supported them pursuant to the obligation assumed by her, the house on the place had become so very dilapidated that the daughter determined to build another. She borrowed the sum of one hundred and fifty dollars from one Willis Liggin, a colored pensioner, whose place of abode was in the neighborhood, and gave to him her note therefor, with Luther Holland, her son-in-law, and Let Skaggs, her cousin, a niece of the Wathens, as sureties thereon. Seventy-five of these one hundred and fifty dollars she expended for lumber which was used in the construction of a house on the place; the remaining seventy-five dollars was expended by her in supporting her parents.

After Martha Puryear abandoned her undertaking to maintain her parents according to the terms of their deed to her, the Liggin note matured. Martha Puryear insisted that, as her parents had received the benefit of the entire sum, they ought to pay the note.

And the Wathens agreed to pay it, provided Martha would re-convey their farm to them, and provided Luther Holland would surrender up whatever rights he claimed under and by virtue of the purported assignment by Martha Puryear to him of her rights under the conveyance executed to her by her parents, and provided Luther Holland would move out of their house.

Pursuant to this understanding, Holland restored whatever writing had been executed to him by Martha Puryear; Martha Puryear re-conveyed the farm to the Wathens, her parents; and they assumed the payment of the note to Willis Liggin.

Liggin wanted only a mortgage to secure the note, but the Wathens, having no ability to earn any money to pay off a mortgage with, and being in need of money to live on, proposed to sell to Liggin twenty acres off of the one hundred acres comprising the farm, for two hundred dollars, one hundred and fifty dollars thereof to be paid by the cancellation of the Martha Puryear note, and the remaining fifty dollars to be paid to them in cash. This proposition Liggin accepted. There was in connection with this a collateral understanding that

the Wathens were to be permitted to use firewood from off of this twenty acres during their lifetime, and that, should any of their children pay Liggin his money, with interest, they were to be entitled to receive a conveyance of the land.   Whether this agreement was included in the deed or not the record does not disclose, for, although this is a suit to obtain the cancellation of a deed, we have found no copy of the deed anywhere in the record.

The Wathens thereupon executed a deed to Liggin covering the twenty acres, and Liggin paid them fifty dollars and cancelled the Martha Puryear note.   About a month thereafter Liggin sold the land to Let Skaggs.

On June 27, 1913, Wathen and his wife instituted this action in the Larue Circuit Court seeking a cancellation of the deed from them to Liggin, and of the deed from Liggin to Let Skaggs, upon the ground that Joseph H. Wathen had not at the time of the execution of the conveyance sufficient mental capacity to give effect thereto; and upon the further ground that the execution of the deed from them to Willis Liggin was induced by false representations made to them by Let Skaggs that Martha Puryear, their daughter, had committed a felony and would be sent to the penitentiary unless they executed the conveyance in question.

A special demurrer was interposed by the defendant, setting up the fact that, upon an inquest held November 29, 1909, Joseph H. Wathen was adjudged incompetent to manage his estate by reason of physical and mental infirmities; and the court thereupon permitted the action to be prosecuted by and in the name of a next friend.

Upon submission and trial, the chancellor dismissed the petition, and plaintiff appeals.

1.   The exact date of the deed from the Wathens to Liggin, the cancellation of which is herein sought, is not shown, but it is alleged in the petition that it was executed in November, 1909, the month in which the inquest was held.

In this State the deed of a person of unsound mind is not void, but merely voidable.   Breckinridge v. Ormsby, 1 J. J. M., 236, 19 Am. Dec., 71; Rusk v. Fenton, 14 Bush, 490, 29 Am. Rep., 413; Arnett's Committee v. Owens, 65 S. W., 151, 23 R., 1409; Johnson's Committee v. Mitchell, 146 Ky., 382, 142 S. W., 675; Logan v. Vanarsdall, 27 R., 822, 86 S. W., 981; Dowell v. Dowell, 137 Ky., 167, 125 S. W., 283.

Concerning the charge that the execution of the conveyance from the Wathens to Liggin, herein sought to be canceled, was induced by threats that the daughter, Martha Puryear, would be sent to the penitentiary unless the deed was executed by the Wathens, little need be said more than the proof is insufficient to support the charge.

Mrs. Wathen herself, when testifying, said that Let Skaggs threatened that, if the deed was not executed, Martha Puryear would be sent to the penitentiary. When asked for what crime, she said, "For owing the money and not paying it." She admits that several persons advised her not to execute the conveyance; and her nephew, Joseph Edwards, aged sixty, and living within a half-mile of the Wathens, testified that he informed them that Martha Puryear was guilty of no offense against the law. Her son, J. R. Wathen, aged fifty, and living within a quarter of a mile of the home of his parents, was cognizant of the negotiations which terminated in the execution of the deed in question. Moreover, she herself, when asked whether the threat mentioned was one of the things that induced her to sign the deed, said: "Well, the main thing that induced me was to get shut of our living with Luther Holland." Her testimony alone supports this charge, and upon this issue she is contradicted by all the direct evidence on the subject as well as by the circumstances obtaining at the time the conveyance was executed.

2. As to the alleged mental incapacity upon the part of Joseph H. Wathen as of the date of the execution herein sought to be avoided, the rule is that to constitute mental incapacity invalidating his deed, the grantor must have been incapable of comprehending or understanding the subject of the contract, its nature and probable consequences. If he has sufficient mental capacity to know and understand the nature, meaning and effect of his act, then mere weakness of intellect will not invalidate his conveyance, unless coupled with inadequacy of consideration, undue influence or other circumstances of inequitable nature. Bevins v. Lowe, 159 Ky., 439; 22 Cyc., 1206; 13 Cyc., 574, 581 and 586.

That there existed upon the part of Joseph H. Wathen on the date of the conveyance in question some weakness of mind may be conceded. He was old, and "childish," and he sometimes talked "cranky" and "kinder flighty." But the proof is wholly insufficient

to support the assertion of alleged mental incapacity upon his part to give validity to his conveyance. One of his sons, who testified to his father's mental incapacity, admitted that he himself, a short time before the deed was executed, had tried to buy a part of his father's farm. It is not a violent inference to say that he doubtless then had no serious misgivings concerning his father's capacity to convey. Another son, since the execution of the conveyance here sought to be avoided, has received from his parents a conveyance of their farm. Moreover, it was shown in evidence that Joseph Wathen made two trips to Willis Liggin's on the day the deed was executed, perfecting the negotiations, and then he and his wife went to the residence of a notary in the neighborhood where they acknowledged it. This notary states that the deed was explained to Joseph Wathen, that he seemed to understand the transaction and know what he was doing, and acknowledged it there in her presence. One of his sons, "Dick" Wathen, was there present at the time.

Six witnesses (his wife, a son, a nephew, and three neighbors) testified that the condition of Joseph H. Wathen's mind on the date of the conveyance was "not good;" while, on the other hand, the defendant and four neighbors, one of them a nominal defendant in this action, testified that it was "good." Of the facts upon which these opinions were formed, the record is practically bare.

It was said, in Bevins v. Lowe, 159 Ky., 439, that to overcome the presumption that the grantor of land is possessed of sufficient mental capacity to give effect to his conveyance, there must be more than a mere equilibrium of testimony. The requirement of this rule the plaintiffs have failed to meet. The burden of proof was upon them; they have failed to sustain it. The fact of the inquest held a few days after the execution of the conveyance sought to be canceled, upon which inquest Joseph H. Wathen was adjudged incompetent to manage his estate, did not operate to relieve the plaintiffs of their duty to establish the asserted mental incapacity upon the part of Joseph H. Wathen as of the date of the conveyance. The inquest was conclusive evidence of his mental condition only at the time of such inquest. Johnson's Committee v. Mitchell, 142 S. W., 675, 146 Ky., 382; Logan v. Vanarsdall, 86 S. W., 981, 27 R., 822; Dowell v. Dowell, 137 Ky., 167, 125 S. W., 283. And, had the inquest been held before the deed was executed, it

would have constituted only prima facie evidence of mental incapacity, and, being a mere presumption, it could be repelled by proof. Dowell v. Dowell, *supra.*

4. Nor is there proof in the record of inadequacy of consideration or other inequitable circumstances which may be coupled with Joseph H. Wathen's weakness of mind, and thus destroy the validity of his conveyance. The price which they received for the land was not unreasonable or inadequate; and they did receive it. Half of the one hundred and fifty dollars which their daughter borrowed from Liggin was spent for lumber to build the house the Wathens now live in; the other half was expended in their maintenance. The additional fifty dollars which they received from Liggin was expended by them in maintaining themselves.

Upon the whole case, we are convinced that the chancellor's judgment was right, and the same is affirmed.