## Williamson, et al. v. Lowe, Administrator, et al.

### (Decided May 26, 1922.)

### Appeal from Pike Circuit Court.

1. Partition—Actions for Partition.—Judgment that 1,227½ acres of land containing coal not definitely located is indivisible, and ordering a sale of same for partition among joint owners under section 490 of the code, upheld where the question of its divisibility was referred to the master, and no exception was filed to his report that it could not be divided without materially affecting its value and the value of the several interests therein.

2. Logs and Logging—Sale of Standing Timber—Proceeds of Sale—Cancellation of Deed.—Where the grantees, in a deed later cancelled because of mental incapacity of the grantor who was their father, sold before cancellation the standing timber on the land, in an accounting among the heirs of the grantor after cancellation, the proceeds of such sale treated as real estate rather than personalty.

STRATTON & STEPHENSON for appellants.

ROSCOE VANOVER and JOHNSON & HATCHER for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming in part and reversing in part.

Upon a former appeal of this case, reported in 172 Ky. 80, three separate deeds executed by O. B. M. Lowe to three of his eleven children for 1,227½ acres of land in the aggregate were canceled because of the father's lack of mental capacity and undue influence upon the part of the grantees, and the cause was remanded for further necessary proceedings.

Upon the return of the case to the lower court it was referred to the master commissioner to hear proof and report upon the several issues not previously adjudged, only two of which are involved upon this appeal from the judgment rendered thereon.

Appellants complain:

(1) That the court erred in adjudging the 1,227½ acres of contiguous land, jointly owned by the parties,

to be indivisible and ordering its sale as a whole under section 490 of the Code, and (2) in allowing Elizabeth Lowe, widow of O. B. M. Lowe, one-half of the sum received by the grantees in the three canceled deeds for timber sold by them while they held title to the land.

Although the land involved in the first complaint is worth nearly $100,000.00, and the sum involved in the second complaint is $16,500.00, and despite the fact that the record is quite voluminous and the second complaint presents questions both novel and difficult, counsel for appellees have not favored us with a brief, and we can not refrain from saying at the outset of this opinion that if under such circumstances we have erred in our conclusions, counsel at least must share in a very large measure with us the blame for the error, and that they ought to have given us the benefit of their views and research now rather than in a petition for a rehearing, although we shall welcome assistance, if it is tendered at even that late date.

1. The master commissioner reported that this tract of 1,227½ acres of land ''cannot be divided advantageously, especialy so that the infant heirs can receive the most benefit for their parts and interest, for the reason that the chief value of this property is the coal and mineral in, upon and under same, and if this was divided into so many small parts it would not sell for as much as if it was sold in a whole boundary, as the small parts would not be large enough for a coal operation, and especially does this hold good as to the infants' parts.''

This conclusion of the master with reference to the infants' parts is unquestionably correct if the land would have to be divided, not into the original eleven shares but according to its present ownership, since one deceased child left nine heirs and another left fourteen heirs; and even if the land were to be divided into but the eleven original shares, his conclusion of indivisibility, despite the size of the tract, seems justified by reason of the fact that the land is valuable chiefly because of the unexplored minerals therein, and the difficulty, if not impossibility, of so dividing it as equally to apportion the unlocated minerals therein.

But be this as it may, the appellants did not file any exceptions to the master's report, and this question of fact was one that was referred to him for the purpose of hearing proof and reporting thereon. This objection to the judgment must therefore be overruled.

2. The canceled deeds conveying this tract of land to three of his children were executed by O. B. M. Lowe on August 21, 1909. Each of these deeds on its face conveys the fee simple title and contains a covenant of general warranty, and the recited consideration in each is "love and affection," but the deed to the son, Tandy B. Lowe, recites as a further consideration for same, "That second party support and maintain first parties during their lifetime at their home, and furnish them a home during their lifetime on the land hereby conveyed."

A lien was retained in this deed upon the portion of the land thereby conveyed, to secure the performance of this part of the consideration.

O. B. M. Lowe died November 25th, 1911, but on April 25th of that year the three children to whom this land had been conveyed by their father executed a deed to John E. McCall for all of the standing timber, of described kinds and sizes, upon the entire tract, which was to be severed and removed within six years from the date of the deed. O. B. M. Lowe, although named as a grantor in the deed, only joined therein, as explained in the deed, "for the purpose of, and does hereby ratify this conveyance, and conveys to the party of the second part such interest as he has in the property and rights above described and conveyed."

O. B. M. Lowe neither claimed nor received any part of the purchase price, all of which was paid to his three children to whom he had previously conveyed the land. This amounted to $33,000.00, and was paid before the death of O. B. M. Lowe, but the trees, except possibly a few, were not severed from the land until after his death.

The master commissioner in his report treated this $33,000.00 as real estate belonging to all of the heirs of O. B. M. Lowe, and apportioned it among them, allowing no part thereof to the surviving widow, Elizabeth Lowe. To so much of the report she and the other appellees filed an exception, which the court sustained and adjudged one-half thereof, or $16,500.00 to the widow.

The basis of the contention by appellees that this fund was properly treated and distributed by the court as personalty, as explained in their exceptions to the master's report, is the fact that O. B. M. Lowe joined in the conveyance of the timber to McCall. Because of this fact it is claimed that he, and not the three children, conveyed the timber to McCall, and thereby converted it from real estate into personal property, and that as such it

descended, one-half to the widow and the other half to his descendants.

For the appellants it is contended that O. B. M. Lowe, merely joined in the deed to McCall for the purpose of releasing his lien upon the portion of the land conveyed to Tandy, and that the timber was conveyed, not by him but by his three children who held title thereto under the deeds subsequently canceled, and that they could not, by any act of theirs, work a conversion of the standing timber from real estate into personal property.

It is not only true that the father did not attempt, as the deed shows on its face, to convey to McCall the timber, or any interest therein except such as he had by reason of the lien he had retained upon the part of the land he had attempted to convey to his son, Tandy, but it is also true, as this court decided upon the former appeal of this case, that he did not have sufficient mental capacity to make the deed to his children, and not having sufficient mental capacity to convey the whole of the land it is necessarily true that he did not have sufficient mental capacity by an attempted ratification of the conveyance of the timber to McCall and the release of his lien upon the land, to convert a portion of the real estate into personal property.

If this deed was a valid act of the decedent and a ratification of the sale of the timber to McCall, it was also necessarily a ratification and confirmation of the prior deeds to his children, whose right to convey under and by reason of those deeds that deed recognizes. But this cannot be true, since those prior deeds were canceled by the former opinion herein.

The conversion, therefore, if any, was not done by him but by his grantees during the time that they improperly held title to the land under the deeds subsequently canceled.

Under the uniform decisions of this court these deeds were voidable only and not void. Dowell, &c. v. Dowell, Admr., 137 Ky. 167, 125 S. W. 283; Johnson's Committee v. Mitchell, et al., 146 Ky. 382, 142 S. W. 675; Wathen, et al. v. Skaggs, et al., 161 Ky. 600, 171 S. W. 193.

The ultimate question, therefore, for decision is whether the grantee, while possessed of the land under a voidable deed that is later canceled, can change the character of the property so as to alter the interests of the rightful owners therein when restoration is made. Although this question must have arisen many times,

neither we nor counsel for appellants have been able to find any authority directly in point. In reason, however, it appears clear to us that he cannot. That one who has wrongfully obtained title to land may do anything while holding same to change its character so as to alter or affect the interests as among themselves or those rightfully entitled thereto is repugnant to every conception of justice and equity upon which the doctrine of conversion rests.

While appellees held title to the land and sold the timber, they held same under voidable deeds, and in a sense as trustees for the rightful owners, but as to them without power to dispose of, convert or change the character of the estate and duty bound upon cancelation to restore the property just as they got it.

Hence, the proceeds of a portion of land sold by them and restored to the rightful owners in lieu thereof, must, it seems to us, be considered for purposes of distribution among the latter as of the character of the property which it represents, rather than as of its character considered apart therefrom.

Under this view, the money received by appellees from the sale of the timber and restored in lieu thereof, must be considered for the purpose of distribution among its rightful owners, the heirs of the grantor, as real estate rather than as personal property, and the chancellor should have adjudged to the widow a life interest in one-third thereof, instead of one-half absolutely. To hold otherwise would give to the widow absolutely one-half of a portion of the land sold by the grantees in the canceled deed, which appellants and the other descendants of O. B. M. Lowe are entitled to recover, subject only to a life interest in one-third that the widow would have inherited except for the wrongful acts of the appellees in disposing of a part of the land to which they did not have valid title.

A conversion, either actual or constructive, does not seem to us possible by any one other than the real owner. But if it should be conceded that a holder of title to realty under a voidable deed might work an actual conversion by a sale thereof, it must be true that upon a cancellation and restoration a court of equity ought to work an equitable reconversion of the proceeds of such sale for distribution thereof among the real owners when, as here, a manifest injustice will result otherwise, since equitable conversion is based on the doctrine that equity regards that as done which ought to be done, and is most fre-

quently interposed for the purpose of doing equity among heirs.

Wherefore, the judgment ordering a sale of the land as a whole and a division of the proceeds among the parties entitled thereto is affirmed, but so much of the judgment as allowed the widow, Elizabeth Lowe, one-half of the proceeds of the sale of the timber to McCall is reversed, with directions to award her instead a life interest in one-third thereof.