## Barbee v. Harvey, Administrator.

(Decided May 14, 1926.)

### Appeal from Nicholas Circuit Court.

1. Husband and Wife—Inter Vivos Gift of Proceeds of Wife's Land to Husband, who did Not, and could Not, Claim them as Beneficiary of Trust in Wife, Held Shown in Suit by Her Administrator

for Accounting (Ky. Stats., Section 2353).—In administrator's suit against decedent's husband for accounting of proceeds of farm, evidence held to show inter vivos gift of such proceeds by decedent to defendant, who did not, and could not, under Ky. Stats., sectión 2353, claim them as beneficiary of trust in decedent.

2. Husband and Wife.—Wife may make inter vivos gift to husband.

3. Husband and Wife.—In absence of fraud, coercion, misrepresentation, or undue influence by husband, inter vivos gift to him by wife will be upheld and enforced.

4. Husband and Wife—Inter Vivos Gift by Wife to Husband May be Made and Fully Executed by Making Payable, and Delivering to Him, at Her Direction, Check in Payment for Her Property.— Inter vivos gift by wife to husband may be made and fully executed by making check in payment for her property payable to husband, and delivering it to him, at her direction.

. SAMUEL HOLMES and I. D. ROSS for appellant.

CONLEY & McCARTHY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—
Reversing.

In the year 1879 the appellant and defendant below, William Barbee, married his wife, Sallie F. Barbee, the latter of whom was a widow with no children, and she and her husband lived a happy and congenial life together, each of them performing his and her respective duties until her death some time in 1919 or 1920, the exact date of which is not shown. They were not blessed with children, but they adopted a daughter whom they took from an orphan asylum and who afterwards married a Mr. Duncan, and whose name at the time she gave her deposition in this case and when she was 32 years of age, was Eva Duncan. Mrs. Barbee died intestate, the owner of about 25 acres of real estate in Nicholas county, the title to which she either inherited from her father or purchased with proceeds of personalty she so inherited. She left no lineal natural descendants and her husband had no such prospective descendants at the time of the filing of this equity action, or when the judgment was rendered therein. It was filed in the Nicholas circuit court by the personal representative of Mrs. Barbee against defendant, her surviving husband, to compel him to render an accounting of certain described personal property in his hands, which the petition averred was owned by Mrs.

Barbee and was her statutory separate property, and that defendant wrongfully withheld it and refused to account for it. It consisted of certain articles of household goods and furniture, and an item of $7,250.00 which defendant before his wife's death had invested in United States government bonds payable to himself individually.

The answer denied the material averments of the petition and affirmatively alleged that the property sought to be recovered by the petition belonged to him and that the item of $7,250.00 represented the proceeds of a farm sold by defendant and his wife, the title to which was in the latter, and that she gave its proceeds to him at the time the purchaser of the farm accepted the deed and paid for it; that the sale of the farm from which that item was produced was made in March 1919, to a Mr. and Mrs. Duncan, and that the farm itself was purchased by defendant from a Mr. Kern in 1911 and at his request, because he was then in feeble health, he directed Kern to make the deed to his wife. Appropriate pleadings made the issues, and upon final submission after proof taken the chancellor sustained the prayer of the petition by finding that the $7,250.00 was a part of the estate of Mrs. Barbee and that plaintiff, her personal representative, was entitled to recover it for the benefit of her estate and judgment was rendered against defendant for one-half of it, with interest thereon from the date it was paid to him, but that he could retain the other half as his distributive share in the personalty of his wife's estate. The judgment also directed defendant to turn over to plaintiff certain of the articles of household goods and furniture, and from that part of the judgment directing defendant to account for one-half of the proceeds of the land he prosecutes this appeal.

Without entering into a detailed statement of the testimony as given by each witness, we deem it sufficient for the purposes of this case to state only the substance of the facts as uncontradictedly proven, or what we find them to be from the overwhelming preponderance of the testimony, and they are: That in 1911 defendant was in bad health, and it is fair to presume that both he and his wife were apprehensive as to the final outcome. He contracted to and did purchase a tract of land consisting of 72½ acres from a man by the name of Kern and paid the price with his own money. He and his wife up to that date and during their long period of marriage were each

industrious and their relationships were most pleasant and happy, and it so continued up to the time of her death.   Fearing that his then ailments would eventuate in his death he directed Kern to convey the land to Mrs. Barbee, which was done; but he continued to operate it and to exercise exclusive control over it as though it was his individual property.   The wife asserted no rights of separate ownership in or to it. In the fall of 1918 the two contracted to sell that tract at  $100.00 per acre and the deed was executed some time in the first part of March, 1919.   It was prepared by the county court clerk of Nicholas county in his office in the courthouse and was signed, acknowledged and delivered at the same time and place.   The clerk and both the vendees, Mr. and Mrs. Duncan, and also defendant, though he was incompetent for the purpose and his testimony was objected to but without any ruling of the court thereon, testified that when the Duncans were about to give their check in payment for the farm the clerk who was making it out asked Mr. and Mrs. Barbee to whom should it be made payable, and that he said, according to the clerk: "Just make it payable to me." And then Mrs. Barbee said: "Make it payable to Mr. Barbee."   The two Duncans testified that "the clerk asked Mrs. Barbee who to make the check to and he said to him," and that then Mrs. Duncan turned to Mrs. Barbee and asked her about the matter and she said: "Yes, make it to Will." There is no contradiction of the testimony of these four witnesses anywhere in the record, either by direct or circumstantial evidence, and there does not appear anywhere therein that defendant at the time or any other time exercised any artifice, undue influence, coercion, or any fraudulent practices to induce his wife to direct and consent to the issuing of the check to him.   On the contrary, some ladies who were neighbors and friends of Mrs. Barbee, visited her at her home after that transaction and they said she told them the reason why she consented for the check to be made payable to her husband was that the farm, the price of which was represented by the check, had originally been bought and paid for by her husband, who on account of his then condition of health had the deed made to her and that in truth and in fact it was his all the time and, in substance, that she so consented because she wanted to restore to him that which had been his from the beginning.

Under such facts we find ourselves unable to agree with the trial judge. We do not consider that the existence of any kind of resulting trust is raised by the proof in the case. The husband is not claiming the proceeds of the land because the wife held the title in trust for him, since under the provisions of section 2353 of our present statutes he could not do so; but his claim to the fund in controversy is bottomed upon a valid *inter vivos* gift of it by his wife to him, and, therefore, the cases of Johnson v. Johnson's Committee, 28 K. L. R. 937; Erdman v. Kenney, 159 Ky. 509, and section 1044 of Pomeroy on Equity Jurisprudence, are inapplicable to the facts of this case, since the matters involved and upon which the court and the learned author of the text book referred to were writing did not involve *inter vivos* gifts from a wife to her husband; and the principles of law therein announced are irrelevant to the facts of this case.

That it is competent for a wife to make such gifts to her husband the same as she, or any other one, may do to a third person is thoroughly settled in the law. 30 C. J., page 706; 12 R. C. L. 928; Walker v. Spalding, 1 K. L. R. 64; Golding v. Golding, 82 Ky. 51, and Long v. Beard, 20 K. L. R. 1036. And see also Martin v. Franklin, 159 Ky. 816, which upheld a transaction that was in effect an *inter vivos* gift by a wife to her husband under facts very analogous to those in this record.

The only difference between a gift by a wife to a stranger and one made to her husband consists, not in her right to make one to her husband, but in the probative force of the evidence establishing such gift. The text in Corpus Juris, *supra,* on that phase of the case, says: "While a gift from the wife to the husband will be closely and carefully scrutinized in a court of equity, and will be defeated where fraud, coercion, misrepresentation or undue influence was exercised by the husband, nevertheless where the gift was voluntarily made and was free from coercion and undue influence it will be upheld as valid, and as binding as a transaction between other persons. A married woman has a right to apply her property, by her own hand or through her husband, directly to the payment of his debts. Also the wife has a right to contribute her money to the improvement of the home of the husband and herself. Where there is a valid and completed gift from the wife to the husband, it is immaterial for what purposes the husband subsequently uses the money or property which was the subject of the gift. The

husband cannot be compelled to return the money or property given nor can the wife reclaim or recover it.'' To the same effect is the text in R. C. L. referred to, and, indeed, there is no dissent therefrom by any court or standard writer upon the subject. Where such vitiating facts appear in the evidence the alleged gift will be discarded, set aside, or annulled, and no effect given to it, but, on the other hand, where they do not appear the gift will be upheld and enforced as in any other case. As we have seen, no such annulling facts appear in this case. On the contrary, it is indisputably established that Mrs. Barbee of her own free volition consented to the payment of the proceeds of the farm, the title to which she held in the manner indicated, in the discharge of what she in her honesty considered a moral obligation, and that since her husband's health was improved his reason for placing the title of the land in her had disappeared and no longer existed. Her desire, therefore, was to restore to him that which she considered rightfully belonged to him.

That an *inter vivos* gift may be made and fully executed in the manner here employed is also thoroughly settled, as will be seen in the text of 28 C. J., page 639, paragraph 29, and by the case of Reynolds v. Reynolds, 92 Ky. 556, and other cases cited in note 31 to the text referred to. Here the wife consented that the check in payment of her property should be made payable and delivered to her husband, all of which was done in her presence and at her direction, and afterwards he cashed it and invested the proceeds in other property, the title to which was taken to himself. We not only now conclude that there was a sufficient present delivery so as to complete an *inter vivos* gift, but it also accords with our ruling in the Reynolds case, *supra*. Many other cases and authorities could be cited in substantiation of the principles we have hereinbefore discussed, but they are so universally recognized that we deem it unnecessary to do so.

Wherefore, the judgment is reversed, with directions to set aside so much of it as directed and adjudged defendant to pay any part of the proceeds of the land to Mrs. Barbee's representative as part of her estate, and to dismiss the petition in so far as it sought such relief.