Chief Justice Robertson
delivered the Opinion of the Court.
wr{(- 0f error ]s brought to reverse a iudgment for . ° _ . , , . four hundred dollars, obtained by Mary Craig, the delenagainst the plaintiffs in error, as exeeutors of her ’ ® ^ ... uncle David Ghiles, deceased, m an action of assumpsit for work and service.
It appears, that Mary Craig—a poor orphan girl—• being in the habit of hiring her services as a seamstress, housekeeper, and nurse of the sick, was engaged by David Chiles, from about the middle of January to the 1st of May, 1834, in superintending his household affairs, and also in waiting upon and nursing his wife, confined by severe sickness from early in January until her death, about the 14th of April, 1834; that, in October of the same year, Chiles, being confined by fever, of which he died early in November, engaged again her services of the like kind until his death; that, during the whole of each employment, her conduct was very faithful and satisfactory; that she not unfrequently, watched and nursed the wife all night, and often prepared for the husband, when he was sick, food and nourishment during all times of night, as well as day, so that she became so enfeebled by lassitude and fatigue as to be in some danger of being confined herself, by indisposition; that her uncle and aunt seemed to be very much attached to her, and very grateful for her kind and assiduous attentions and affectionate services; that he had paid or given to her about forty dollars, when she waited on his wife; and said, only a few days before his own death, that if he should survive, he would 'reward her ‘bountifully,’ and that, if he should die, he *545 Would remember her, and desired that his executors should pay her liberally, and that, if she should not then be satisfied, she might make out her bill.
Verdict, &c.
in actions ex ^ntractu for to be recovered greement) is the ™ces. °f the aer"
When a special ved!eorenma/b8 inferred from the circumstances, it may be enforced, although the amount may greatly exceed the usual estimate of similar services. And—
Where the evidence authorizes the conclusion, that the employer intended to pay, and the party employed expected to receive, a very liberal compensation, the verdict may be in coh•forrmity to the intention and expectation. But—
Obligations of gratitude, or bounty, merely, cannot be enforced by law; gratitude, benevolence, gratuity, propinquity, &e. cannot be made the ground of any action; nor can any of them, or all together, justify any very considerable augmentatiorl of a -verdict for service* rendered.
It appears, also, that, not being willing to accept what, the executors were willing to allow, she made a bill amounting to about four hundred dollars, which they refused to pay, and which one witness thought to be reasonable—not from any thing he knew, but from What he had heard in the neighborhood. And it was proved, also, thát the usual price for the services of hired nurses for sick persons, was about two dollars and fifty cents a week.
There is not only no proof that the services of the defendant in error were worth as much as four hundred dollars; but the jury wei’é hot, in our opinion, authorized by any facts before them, to infer that they were, in any legal view of the case, worth that much. Upon the foregoing facts alone, the jury found the verdict for four hundred dollars; and the Court overruled a motion for a new trial, made on the ground of alleged surprise, and of palpable exorbitance.
We do not think that there was such cause for surprise as, on that ground alone, to entitle the plaintiffs in error to a new trial.
But we cannot resist the conclusion that the verdict cannot be sustained, as to amount, by the law and 'the facts.
In actions ex contractu, for service, the value of the service is the measure of legal right. A plaintiff is entitled to recover no more; the law implies a promise to pay no more; and,if a jury find a verdict for more than the defendant assumed or was liable to pay, their verdict is -not warranted by law, and may, therefore, be set aside.
■ In this case, there are peculiar circumstances which might authorize an assessment beyond the sheer value of *546 ordinary hired service, in the employment in which the defendant in error was engaged; not, however, on the ground of gratitude, gratuity, benevolence, or propinquity, or all combined, but on that of an intention on one side to remunerate, and an expectation on the other side to receive more than the strict money price of ordinary hired service^
Had the testator agreed to give four hundred dollars', or even more, we should not, under the peculiar circumstances of the case, have been disposed to disturb the verdict for excessiveness. Nor should we incline to set it aside if, even, the jury had been authorized to infer, that he intended and' had agreed to allow whatever she might please to charge, as a just and liberal reward to a destitute niece, in consideration of service and of affec-1 tion and blood¿
But the law cannot enforce any obligation of mere gratitude or bounty, or compel the payment of that which there was no agreement, express or implied, to pay. And there is.no legitimate evidence that will au-1 thorize the inference that there was any agreement to allow whatever the defendant in error might charge. And therefore, not being able to perceive any ground for presuming that there was any kind of agreement, or legal obligation, to pay as much as four hundred dollars, in addition to what had been paid or given—we feel constrained to decide, that the verdict and judgment are not sustained by the law and the facts of the case.
What would be an allowable measure of liberal reward, the law cannot decide with mathematical precision or certainty; and therefore, we would be inclined, in this case, to disturb no verdict merely because it might be liberal. But, after deducting what had been paid, the disproportion, between what remained of the price of ordinary hired service, and the amount of the verdict, is so great as, at first blush, to impress the conviction that the jury thought, either that they ¡night assess whatever the defendant in error chose to claim; or that they might administer on the estate of the testator, and give what he, in their judgment, ought to have given, or would have given, to his niece, had he *547 made her a legatee cctusct mortis. That might be morally just; but the law, founded on rules of legal right, cannot go so far, and limits the assessment to the amount, not of a liberal gift, but of a liberal compensation.
Wherefore, it is considered, that the judgment be reversed, anff the cause remanded for a new trial.