CASE 5—PETITION EQUITY—MARCH 6.

# Price v. Price's Executor.

### APPEAL FROM BOYD CIRCUIT COURT.

1. EVIDENCE.—In an action by a sister against the estate of her deceased brother on an express promise by him to leave her a legacy at his death, to compensate her for services rendered him by her in his lifetime as cook, housekeeper and nurse, her statements as to the promise are not competent evidence.

2. IMPLIED PROMISE.—In such cases, where the relationship between the parties is such as to raise the legal presumption that they lived together as a matter of mutual convenience, the law will not imply a promise of compensation. The law will imply no contract to compensate for services rendered by one person to another when the parties stand in the relation of parent and child or brother and sister; and much stricter proof will be required to establish such contracts than would be if they were between strangers.

3. PLEADING—VARIANCE.—In such an action upon an express promise the plaintiff will not be permitted to recover upon an implied promise of compensation for services rendered, as there would be a fatal variance between the contract alleged in the petition and the one which the law would imply. Nor will the court, considering the relations of the parties, raise a presumption of an implied promise in such a case.

R. C. BURNS FOR APPELLANT.

1. If the evidence of the appellant is treated as incompetent there is still abundant evidence in the record to show the fixed determination and purpose of the decedent to pay appellant out of his estate for her services to him.

2. But at any rate there is a state of case from which a Chancellor, in the interest of justice, will imply a promise.

3. Mere expectation can not in general create an enforcible contract, and affect a valid claim against the estate of the indebted person. The evidence shows an implied understanding that Jacob was to pay Kate for her services.

4. If an aged and feeble man makes a different will from what had been agreed upon, the claim may be presented for settlement to the whole or partial absorption of the estate. A probate or common law tribunal can not set aside a will as an instrument, nor remodel or construe the will to meet the special compact of the parties, but they may allow the claim against the estate in the interest of justice. Schouler on Wills, section 453; Shakespeare v. Macun, 17 N. Y. Spr., 3111; Schouler on Domestic Relations, 3 Ed. sec. 274.

JOHN F. HAGAR FOR APPELLEE.

1. The evidence of the appellant as to express promise by the decedent was the only evidence sustaining the express promise, and that being about transactions with a deceased person, was incompetent, and the express promise would have to be shown before appellant could recover. Newton's Executor v. Field, 17 Ky. L. Rept.; Hartman Appeal, 3 Grant's cases; Reynolds v. Reynolds, 13 Ky. L. Rept., 793; Wayman v. Wayman, 15 Ky. L. Rept., 374.

2. The law will imply no contract to pay for services rendered by a son to father, or sister to brother, but clear, unequivocal proof of such a contract between such parties is always required. Zimmerman v. Zimmerman, 129 Penn. State, 229; (15 Am. St. Rept., 1721,) 29 Wis., 278. (9 Am. Rept., 559); Wall's Appeal, 111 Penn. State, 460. (56 Am. Rept., 288.)

JUDGE DuRELLE DELIVERED THE OPINION OF THE COURT.

The appellant in this case instituted a suit in equity against the appellee as executor of Jacob Price for services rendered "at the special instance and request of her brother, the testator, and in compliance with his earnest entreaty" in housekeeping, cooking and washing and nursing and waiting on him until a short time before his death, the alleged value of such services being placed at $17,526.66.

The petition alleged that "to induce her to perform said services her brother promised and agreed that he would leave her a legacy at his death of the value thereof and compensate her therefor, but has failed to do so."

It was further alleged in the petition that in consideration of her services, and to induce her to remain 'with him, the testator promised to build for her a brick dwelling house and leave it to her as a legacy and as compensation for her services; that the house was built and of the value of $10,000, but that he failed to leave said property to her or any legacy in lieu thereof. She also avers the amount of her services and their value. By the will of Jacob Price she is entitled to a legacy of $1,000, with a provision for duplicating all the legacies should the estate prove sufficient, and $300 for services rendered during the testator's sickness.

It appears from the testimony, aside from that of the appellant herself, which was rejected, and properly, by the trial court as incompetent, that on numerous occasions her brother made use of general expressions of affection for his sister and of an intention to provide for her, some of the expressions being specifically in relation to the brick house referred to in the petition, namely, that she would have it at his death; expressions used by him during the time the house was being erected, to the effect that he wanted a good house for himself and his sister Kate, and expressions of his intention to give it to her.

There was also evidence tending to corroborate the incompetent testimony of appellant that on one occasion, when about starting on a journey, in order to provide for her in case of his death while on his trip, he executed a mortgage to her,

and on another similar occasion a note. Both of these writings appear to have been afterwards destroyed.

These expressions are relied on for appellant as tending to show an express promise to compensate her for her services while she lived with him. At best the language used by the testator was indicative of an intention to provide for her in his will in a particular manner. Of any direct promise to leave her the brick house referred to in the petition, or even to compensate her for her services on a *quantum meruit* there is not the slightest competent evidence in the record. That the services were rendered and were perhaps more valuable than her living expenses furnished her by her brother there is abundant evidence. It may be conceded that her services were such as to justify her in expecting that her brother would provide for her liberally. But the relationship between the parties was such as to raise the legal presumption that they lived together as a matter of mutual convenience, and, with such relationship existing, the law will not imply a promise of compensation. The law on this point is well stated in Hartman's Appeal, 3 Grant's Cases, as follows: "And as under the circumstances the law implied no obligation on the part of the deceased to pay, before appellant can claim as creditor he must prove an express contract. Admitting what is not entirely clear that the services rendered as these were imposed a moral obligation to do more than was done by the will, sufficient for a consideration for an express promise, yet the evidence of such a promise must be direct, clear and positive. Loose declarations made to others, or even to the claimant himself, will not answer. That which is only an expression of intention is inadequate for the pur-

pose. It must have been the purpose of the deceased to as-sume a legal obligation capable of being enforced against him. The ordinary expressions of gratitude for kindness to old age, weakness and suffering, are not to be tortured into contract obligations." (Reynolds v. Reynolds, 13 Ky. Law Rep., 793; Wayman v. Wayman, 15 Ky. Law Rep., 374.)

The law implies no contract to compensate for services ren-dered by one person to another when the parties stand in re-lation of parent and child or brother and sister. Much strict-er proof is and should be required in such cases than in cases arising between strangers. Such claims, as a rule, rest en-tirely in parol; are based largely on loose declarations, and are presented years after the services were rendered, when the lips of the party principally interested are closed in death. They require the closest scrutiny to prevent injustice being done. "The declarations of a parent may admit the filial devotion and real worth of his child, and the profit he may derive from his services. They may reach further and dis-close his own sense of obligation and his stated purpose to compensate. But all this is insufficient to raise a promise."

It is urged, however, for appellant that even if she can not recover upon the express promise alleged in the peti-tion that averment may be rejected as surplusage, and she may be permitted to recover upon an implied promise of proper compensation for valuable services rendered. The petition, however, relies upon the express promise, and the point in question has been directly passed upon by this court in the case of Newton's executor v. Field, 17 Ky. Law Rep., 769, which case also distinctly decides the inadmissibility of plain-tiff's testimony as to transactions with the testator. That

was a suit brought by a collateral relative where the law might imply a promise to make compensation for valuable services rendered before the death of the testatrix. This court there said: "There is a fatal variance between the contract as alleged and that the law would imply by reason of the services having been rendered at the request of the defendant. It is not pretended that this action is based upon the implied contract, but that as the express contract has failed for want of proof a recovery may be had without pleading upon an implied agreement. This can not be done. (Frankfort Bridge Co. v. City of Frankfort, 8 B. M., 424; 18 B. M. 34; 9 B. M., 271.")

Nor can we, in a case like this, raise a presumption of an implied promise. In this respect we think the law well stated in Hall v. Finch, 29 Wis., 278—a claim by a sister for compensation for services rendered to her brother. The court said: "The rule of law is not that the administrator or representative must establish a negative in order to defeat the claim. The relation existing between the parties, as parent and child, step-parent and step-child, brother and sister, and the like, is itself strong negative proof, and raises a presumption that no payment or compensation was to be made beyond that received by claimant at the time, which can only be overcome by clear and unequivocal proof to the contrary. The evidence must be clear, direct and positive that the relation between the parties was not the ordinary one of parent and child, or of brother and sister, but that of debtor and creditor, or master and servant. To establish this new relation it is obvious that some arrangement or contract to that effect must be shown. No man is to be

made debtor without his knowledge or assent, or under circumstances where he had no reason to expect that such is his position or liability."

The authorities cited for appellee upon this question, Schouler on Wills, section 453, and the authorities there cited, relate to cases where a stranger rendered the services for which compensation was sought. In our judgment the law of this case was correctly stated by the trial court in its opinion when it said "that the right of plaintiff to maintain action or recover against the estate of her deceased brother the value of services rendered or legacy in compensation for such services wholly depends on whether or not there was promise on the part of Jacob Price definite in nature and terms to compensate the plaintiff for her services by legacy certainly and definitely expressed. There is no certainty in the evidence upon this point, and no evidence, aside from the evidence of the plaintiff based upon statements of and conversations with Jacob Price, which the court excludes as incompetent for such purpose that such promise or agreement was made by said Price."

The judgment is, therefore, affirmed.