## Benge's Administrator v. Fouts.

(Decided March 16, 1917.)

### Appeal from Clay Circuit Court.

1. Witnesses—Competency—Actions Against Administrators.—Parties to an action against an administrator can not testify in their own behalf as to any statements by or transactions with or acts done or omitted to be done by the deceased intestate, except as provided by section 606, of Civil Code, but they are competent witnesses for each other, and such degree of interest, as they may be shown to have, may be considered as affecting their credibility, but not their competency.

2. Executors and Administrators—Services Rendered Decedent.— Compensation for services can not be recovered where the relationship of the parties is such as to raise the presumption, that they have lived together for mutual convenience, and where a moral obligation rested upon the parties, who claim the compensation, to render the services, in the absence of an express contract to pay for the services, or of an expectation, at the time, on the part of the performer to charge and receive compensation

for the services and of the recipient to pay therefor, because in such cases a contract to pay for the services will not be implied.

3. Executors and Administrators—Services Rendered Decedent.—Where one renders services in consideration of a promise by the recipient of the services to make a testamentary provision by will for the one performing the services in payment of same and fails to make such devise, a reasonable compensation for the services may be recovered.

4. Witnesses—Declarations of Intestate.—A party sued upon a contract can not, in his own behalf, prove declarations of his own, not made in the presence or hearing of the opposing party, to disprove the existence, or terms of the contract, and if dead, his personal representative, standing in his stead, can not make proof of such declarations of the intestate to disprove the existence, or terms of the contract.

WILLIAM R. RAMSEY, GEORGE A. YOUNG and GEORGE G. BROCK for appellant.

H. C. FAULKNER, H. C. FAULKNER, JR., D. W. WHITE, J. W. STIVERS, W. E. FAULKNER and W. A. STANFILL for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

This appeal is from a judgment in the Clay circuit court for the sum of five thousand and five hundred dollars, in favor of the appellee, Kitty Fouts, against the appellant, George A. Young, administrator of the estate of Elmira J. Benge, more commonly called in the record, Jane Benge. A little history of the facts out of which the controversy grew, as well as the relations between the actors, will be necessary to an understanding of the questions at issue. The intestate, Jane Benge, seems to have been a native of the state of Iowa, or probably she was born in Clay county, Ky., after which, in her infancy, her parents removed to the state of Iowa, where she was reared. At the age of thirty-one years she was sorely afflicted with asthma and upon advice of her physician, she left Iowa and came to Clay county, where a great many of her distant relatives resided, and there took up her abode. The change of climate relieved her of the asthma and she engaged in teaching school, which employment she continued until 1874, when she associated with herself a young woman, whose name was Ann Benge. She had several hundred dollars in money, which she had accumulated from teaching school, when she went to Iowa and returned with two thousand dollars in money, which she had received from the sale of

lands, which had been given to her by her father. With
this money she engaged in merchandising, with the as-
sistance of Ann Benge, who was then a young woman
eighteen years of age. Her business venture prospered
and in a short time she bought a farm in the same com-
munity and went to reside upon it. After a time she
erected a large three-story store house and continued the
business of a merchant, and from year to year she
acquired more lands and engaged in farming, buying
and selling stock, grain and other of the commodities of
the country. During these years, Ann Benge and intes-
tate resided together and Ann did all the cooking, wash-
ing and housekeeping for the two, made the fires, fed
the stock during the winter and in the summer she
worked in the fields and supervised the work of other
hired hands, and did every kind of farm work, except
to plow, and upon occasions she assisted in the store.
This continued until 1882, when Lizzie Parker came to
live with the intestate and Ann Benge. She was then
a girl only eight years of age, but she continued to live
with them until the year 1894, and while there engaged
in every kind of work which she was able to perform,
and as soon as she was old enough and large enough to
do so, she, also, engaged in work upon the farm and as-
sisting in handling and feeding the stock, cultivating
and harvesting the crops, and worked in the fields gener-
ally. In March, 1885, the appellee, Kitty Fouts, who
was then a young woman eighteen years of age, and
whose name was Kitty Cornett, came to attend a school
and while at same resided at the house of intestate. The
intestate at once set about procuring her to live with
her, also. The appellee's parents, however, would not
consent to her remaining with the intestate all of the
time, but the appellee and intestate arranged, that when
she became twenty-one years of age that she would re-
turn and live with her. She, however, lived with intes-
tate about three-fourths of the time for the following
three years and on the day she became twenty-one years
of age the intestate came for her with a buggy and she
lived thereafter with the intestate for nearly twenty-
one years.

From 1885 to 1893, Ann Benge, Lizzie Parker, and
the appellee all lived in the home of the intestate. The
appellee did the work of cooking and washing and keep-
ing the house and assisted in the store and, also, the

post office, of which the intestate was the keeper, and kept the books of the merchantile business, while the other two girls worked upon the farm and handled the stock, but in 1893, Ann Benge married a man, whose name was Creech, and hereafter we will call her Ann Creech. In 1894, Lizzie Parker, whose name theretofore was Lizzie Philpot, married Dr. Parker. Each of these girls went to live with their husbands, who lived in the community. The appellee continued, however, to live with the intestate, and her duties, on account of the other two having gone, became much more arduous. She did the cooking, made the fires, kept the house, fed the stock in the winter, oftentimes worked upon the farm, especially at harvesting times, worked as a clerk in the store and post office, and thus continued until the year 1896. In 1896 intestate made a visit to Iowa and returned from there very much afflicted with asthma, from which disease she never recovered, except temporarily, during her lifetime. She was about one-half to three-fourths of her time thereafter entirely unable to do anything or to assist herself when suffering from attacks of the asthma, and among other duties which the appellee performed was that of waiting upon and nursing the intestate. She was oftentimes engaged in the nursing both day and night, and she thus continued until the year 1906, when she married one Fouts, but she and her husband resided with the intestate until December, 1907, when she went to reside at the home of her husband in the community. Ann Creech and Lizzie Parker, during these years, oftentimes came, at the request of the intestate and assisted in waiting upon her and after the appellee had moved to the home of her husband she continued from time to time to come to the house of the intestate and assist and nurse her, but during the years 1910, and 1911, Ann Creech took the intestate to her home, where she remained during the greater part of those years and she was nursed and waited upon by Ann Creech. The intestate died on the 11th day of December, 1911, leaving an estate of between twenty-five and thirty thousand dollars in value. This suit was instituted by the appellee against the administrator of the intestate to recover from the estate the value of her services for the twenty-three years which she had lived with and served the intestate. By her petition and amended petition she alleged the rendition of the ser-

vices and their value, and claimed that the services were
rendered and received by the intestate under a contract
between them to the effect, that before the intestate died
that she would make a will, in which she would devise
to the appellees, Ann Creech, and Lizzie Parker, a suffi-
ciency of her property to pay them liberally for all the
services that they had rendered for her. According to
the allegations of the petition and amended petition, the
same character of contract existed between Ann Creech
and the intestate from 1874 until 1882, at the time Lizzie
Parker came to live with the intestate, when the same
contract was entered into between them, and that when
the appellee came to live with the intestate the same con-
tract and arrangement was entered into between them,
and under the terms of this agreement the intestate was
to make a will and devise to the three girls, in con-
sideration of their services for her, all of the property
which she should die the owner of, except the amount
which she had receievd from her father's estate, which
she desired to go to her brothers and sisters. She died,
however, without making any will. About the same time
that this action was instituted, Ann Creech and Lizzie
Parker instituted similar actions to recover the value of
their services. This action and that of Ann Creech were
tried together and it resulted in a verdict in favor of
each of them for the sum of seven thousand and five hun-
dred dollars, but upon appeal to this court by the ad-
ministrator the judgments were reversed, because it
was held that each of them being competent witnesses
to prove the contract between intestate and the other
and the value of the services of the other, that a trial
of the two cases together resulted substantially in per-
mitting each of them to testify in their own behalf, and
took of the appellant an unfair advantage. Another
ground of reversal was the error of the court in the in-
struction to the jury, and another was that the judg-
ments were excessive. Upon return of the actions to the
court below, the cases were tried separately and re-
sulted in a judgment in this action in favor of the ap-
pellee for the sum first stated. The appellant's motion
and grounds for a new trial being overruled, he has
again appealed to this court. A reversal of the judg-
ment is now urged for the following reasons: .

(1) The evidence was insufficient to support the contract relied upon in the petition or any contract of a similar nature.

(2) The court erred in refusing to permit the appellant to file an amended answer, alleged to conform his defense to the proof.

(3) The court erred in instructing the jury and in refusing instructions to the jury.

(4) The court erred in the admission and rejection of testimony.

(5) The verdict of the jury was excessive.

(1) (a) With reference to the insistence of appellant, that the evidence is insufficient to prove the making of the contract relied upon in the petition, it is urged that Ann Creech and Lizzie Parker are not competent to testify as witnesses for appellee. They detail conversations between intestate and appellee and themselves, which occurred at and after the time appellee began to serve the intestate, and the argument is, that neither of them is a competent witness under section 606, subsection 2, of the Civil Code, because they each have a claim against decedent's estate for services, part of which were performed during the same period in which appellee makes claim for services, and are relying upon the appellee as a witness to prove these same conversations and others to sustain the contracts under which they are seeking a recovery for their services, and decisions of courts in other jurisdictions are cited, which are alleged to sustain the contention. This, however, is not an open question in this jurisdiction or in this case. In the former opinion, which may be found in 163 Ky. 796, this contention was decided adversely to the appellant, and the holding is in conformity to former opinions of this court in Beach v. Cummins, 13 R. 881; Story v. Story, 22 R. 1731; Schlonbachker v. Mischell, 121 Ky. 498; Dovey v. Lamm, 117 Ky. 19. Neither of these witnesses is a party to this suit, and the rule is, that while parties to an action against an administrator can not testify in their own behalf as to any statements by or transactions with or acts done or omitted to be done by the deceased intestate, except as provided by the provisions of section 606, of the Civil Code, they are competent witnesses to testify for each other and such degree of interest as they may be shown to have may be

considered as affecting their credibility, but not their competency.

(b)  Although in the former opinion in this case it was held that the evidence of the making of the contract relied upon, though less direct and clear than was heard in the trial appealed from, was sufficient to require the submission of the issue to the jury, it is again insisted seriously that the motion of appellant for a direct verdict in his behalf ought to have been sustained by the trial court.  In support of this contention, several of the line of cases, which hold that a contract will not be implied to pay for the services of one person for another where the parties live together, and the relationship between them was such as to raise the presumption that they lived together for their mutual convenience, and that in such cases stricter proof is necessary to establish a contract than is required in ordinary cases, were cited.  There can be no doubt of the soundness of the principle enunciated in many cases in this jurisdiction and in others, where it has been held that compensation for services can not be recovered where the relationship of the parties is such as to raise the presumption that they lived together as a matter of mutual convenience, and where a moral obligation rested upon the parties claiming compensation for rendering the services, in the absence of an express contract to pay for the services, or in the absence, at the time the services were rendered, of an expectation on the part of the performer to receive compensation therefor and of recipient to pay therefor.  Foley v. Dillon, et al., 105 S. W. 461, 32 R. 222; Davis v. Wilson's Ex'tr, 14 R. 301; Reynolds v. Reynolds, 92 Ky. 556; Price v. Price's Ex'tr, 101 Ky. 28; Wallace v. Deeny's Admr., 90 S. W. 1046; Northip's Admr. v. Williams, 100 S. W. 1192; Baugh v. Baugh's Admr., 109 S. W. 345; Newton's Ex'tr v. Field, 98 Ky. 186; Perry v. Perry, 2 Duvall, 312; Conover v. Conover, 1 R. 398; Frailey's Admr. v. Thompson, 49 S. W. 13; Wayman v. Wayman, 22 S. W. 557; Heck v. Heck, 10 R. 281; Conway v. Conway, 130 Ky. 218; Terry v. Warder, 25 R. 1486; Green's Ex'tr v. Green, 82 S. W. 1011; Engleman v. Engleman, 1 Dana 438; Bishop v. Newman's Ex'tr, 168 Ky. 245; Boling v. Boling's Admr., 146 Ky. 313.  In such instances, proof of the rendition of the services or mere expressions of intentions to compensate or statements of the desire by the recipient that

the performer of the services shall be well paid are not sufficient to prove a contract for compensation, but appellee and intestate, in the instant case, did not bear such a relation to each other as to raise the presumption that the services of appellee were rendered gratuitously, as was held in the former opinion in this case, where referring to the petition and amended petition it was said:

"The cause of action therein stated, in the absence of the express contract alleged, would have authorized a recovery for the reasonable value of the services upon satisfactory proof of an implied contract, to the extent that the respective claims were not barred by the statute of limitations."

Besides, in the instant case, an implied contract for recovery is not relied upon. The contract relied upon is an express one, by the terms of which the intestate agreed to pay for the services in a particular manner and at a particular time, that is, the intestate agreed to make a will and by the will would devise to appellee and Ann Creech and Lizzie Parker, who performed services similar to those of appellee for her, her property, except a designated portion of it, to compensate them for their services. The appellee could not recover without first establishing by evidence the existence of the express contract, for in the absence of the express contract to make payment for the services by a devise for the benefit of appellee in a will, which could only take effect at intestate's death, appellee's claim for the greater part of the services rendered by her, if not all, would have been barred by limitations, which statute was plead and relied upon by the appellant. The contract relied upon is one for the breach of which a recovery may be had. Where one renders services in consideration of a promise by the recipient of the services to make a testamentary provision by will for the one performing the services in payment of same and fails to make such devise, a reasonable compensation for the services may be recovered. Newton's Ex'tr v. Field, 98 Ky. 186; Myles v. Myles, 6 Bush 237; Usher v. Flood, 83 Ky. 552; Thomas v. Feese, 21 R. 206; Walker v. Ganote, 116 S. W. 689, 40 Cyc. 2813. However, where one renders services in the mere hope that the recipient will be generous enough to compensate him by a provision in his will, and has no contract, either express or implied, to be paid in that way, can not recover. The con-

tract of intestate to compensate the appellee for her
services by executing a will with a provision in it for
her benefit, though expressed in different ways, is sub-
stantially proven by Ann Creech and Lizzie Parker, and
they are corroborated by other circumstances in the evi-
dence. The criticism to the effect, that it is improbable
that appellee would serve for more than twenty years
and wait until intestate's death for her compensation is
met with the argument that it would not be reasonable
to conclude that she would undergo such a long and
arduous term of service without an expectation of com-
pensation, and further, that intestate was in feeble
health for the fifteen years just preceding her death, and
that no one would reasonably contemplate that she would
have lived so long, and the argument that intestate,
with her methods of thrift, would hardly be willing to
defer the payment of an obligation until her death, is
met with the suggestion, that many persons of thrift,
who have no children to inherit their property, are more
willing to part with a much larger sum after death than
with a less sum upon this side. Those, however, are all
arguments, which go to the intelligence and credibility
of the witnesses and these are matters for the jury, who
were face to face with all the witnesses and who had
opportunity to observe their demeanor and apparent
integrity of character, and to judge of the estimate to
be placed upon their testimony.

(2) The appellant, by his answer to the amended
petition, denied that the contract for the payment of the
services of appellee, as set out in the petition and
amended petition, was ever made or any contract of any
kind ever existed between intestate and appellee for the
payment for her services. After the first trial of this
case, an appeal to this court was had and a reversal of
the judgment and the case was remanded for a new trial
to the court below, and a second trial of the case entered
upon. The appellant offered to file a second amended
answer, which was alleged to be for the purpose of mak-
ing the pleadings conform to the proof, and while still
expressly denying that any contract had ever been made,
by which intestate had undertaken to make any testa-
mentary provision for appellee, it alleged that if such a
contract had been made it was to the effect that appellee
would remain with and serve the intestate until her
death, and that she had broken and violated the con-

tract by marrying and leaving the house of intestate, and for that reason was not entitled to recover. The court refused to permit the amendment to be filed and of this the appellant complains. The filing of an amended pleading at such a stage of an action is a matter within the sound discretion of the court, which does not seem to have been abused by its refusal to permit this pleading, which contains contradictory pleas, to be filed. Besides, there was no evidence adduced of the terms of the contract alleged in it to which its allegations conformed. The contract as alleged and which the evidence for appellee tended to prove, did not provide that the appellee should serve the intestate as long as she should live or that she should never marry.

(3) The instructions fairly presented the issues made by the pleadings, and are in substantial conformity to the directions as given by the former opinion of this court.

(4) (a) Upon the trial, the appellant offered two witnesses, by one of which it was offered to be proven, that the intestate, during the latter three or four years of her life, had made declarations, not, however, in the presence or hearing of appellee, to the effect, that she intended that her property at her death should be inherited by her brothers and sisters, and a third witness, to whom as avowed, intestate declared that she did not intend to give any of her property to appellee or to Ann Creech or to Lizzie Parker. The court sustained objection to this proposed testimony and this is complained of as error. Declarations of this character by the intestate and not made in the presence or hearing of the other party to the controversy, were incompetent upon the ground that they were self-serving declarations, and to permit them to be proven as evidence would allow a litigant to sustain his cause by proving what he had said about it to third parties, where his adversary had no opportunity to gainsay the declarations. Hart v. Smith, 2 A. K. M. 301; Talbot v. Talbot, 2 J. J. M. 3; Howard v. Dictrick, 9 R. 441. The representatives of an intestate, standing in his place, can not prove declarations of the intestate, which would be incompetent or irrelevant to be proven by the intestate, if alive and engaged in the litigation. Penn v. Fightmaster, 13 R. 449.

(b) The appellee was permitted, over the objection of the appellant, to introduce the appellant, himself as

a witness, and by him to prove the value of the estate of intestate at the time of her death. There were a number of declarations of the intestate proven in the record to the effect, that appellee had assisted her to make what she had, and the court permitted the evidence, presumably, upon the ground, that it was competent, as affecting the value of appellee's services. We are of the opinion that the admission of this evidence as to the value of the estate was error, as the action was based upon an express contract for the recovery of compensation for services, and the value of the estate could not be a criterion for the value of appellee's services. Childer's Ex'tr v. Craig, 4 Dana 544. Other competent evidence was heard, which in a large measure proved the value of the estate, and the jury was specifically directed to find the value of the services at the time and place of the rendition. The verdict does not indicate that the jury was influenced by the amount of the estate, and hence the evidence, under all the facts of the case, was not prejudicial.

(c) Other objections were made to the testimony of various witnesses, but the rulings of the court are not complained of in the briefs and the ones of importance seem to have been determined upon the former appeal.

(5) It is seriously urged that the verdict is excessive. The established doctrine of this court is, that a verdict will not be set aside because of excessive damages allowed by it, unless the damages appear to be so great as to strike the mind at first blush as having been caused by passion or prejudice on the part of the jury. The undisputed evidence was to the effect, that the appellee, from the time she was eighteen years of age until twenty-one, served the intestate about three-fourths of the time, and from the day she was twenty-one years of age and for twenty years thereafter she constantly served the intestate; she kept the house, made the fires, did the cooking for the family and work hands, worked in the store and post office, assisted in keeping the books of the mercantile transactions; oftentimes worked upon the farm; assisted in cultivating and saving the crops; looked after and fed the stock with the assistance of Ann Creech and Lizzie Parker until 1893 and 1894, when they left, and after that time, alone, fed, milked and cared for the stock, which sometimes consisted of thirty

to forty head of horses and other stock, and during the last eleven years of her service waited upon and acted as a nurse for intestate, who needed her services in that way for the larger part of the time, oftentimes requiring her services both day and night, and was only relieved from these services as a nurse occasionally when Ann Creech or Lizzie Parker would for a time attend and assist her. The evidence shows that these numerous duties required her to be constantly engaged during all the time. That the services were faithfully rendered, is proven by all the evidence and attested by the frequent declarations of intestate. There is not the slightest effort made to prove that the services were not rendered as described. While the verdict is liberal, it is largely less than the value of the property, which, according to the proof, intestate contemplated bestowing upon appellee, and it is not more than, when intestate would undertake a journey, she would put into the hands of appellee, in the way of a promissory note or money, with directions, that if she died suddenly, and failed to make a will, to keep it as a compensation for her services, but when intestate returned safely, she would take back the note or money. The whole court sitting.

The judgment is, therefore, affirmed.