## Murphy's Executor v. Bryan.

(Decided June 21, 1929.)

MORRIS & JONES for appellant.

LESLIE W. MORRIS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Miss Josephine Murphy, to whom we shall hereinafter refer as the deceased, died on September 17, 1925, testate and a resident of Frankfort, in Franklin county, Ky. The appellee and plaintiff below, Fannie Murphy Bryan, was her sister. In the latter part of the year 1918, deceased sustained an accident to one of her legs, whereby she was partially and temporarily crippled. She largely recovered from that, but from that time on her health declined, and there developed with her some trouble with her heart that was manifested by occasional smothering spells, and in the latter part of 1919 plaintiff, who was then residing in the city of Louisville, came to Frankfort to live with her sister, the deceased, and which she continuously did from that time until the latter's death.

After the qualification of the executor and trustee of the will and estate of the deceased, the appellant and defendant below, Capital Trust Company, plaintiff filed this ordinary action against it in the Franklin circuit court, alleging that she kept house and did the cooking for deceased and nursed her throughout the time of plaintiff's residence in the house, and that such services were performed under the express agreement with the deceased to pay therefor, and in her original petition she placed the value of them at $2,621.10, with a credit thereon of $445.41 that deceased paid her during the time, and she prayed judgment against the executor for $2,175.10. In an amended petition she again relied on the express contract and that "payment for her said services was to be made at her (deceased's) death. She divided therein the services into periods from November 1, 1920, to November 1, 1922, and alleged that the services were worth $10 per week for those two years, and that from the latter date to the death of the deceased they were worth $25 per week, and she prayed judgment for $3,915.

The answer denied the material averments of the petition, and the parties went to trial before a jury. At

the close of the evidence, plaintiff again amended her petition and alleged therein that, ''The compensation which the plaintiff was to receive for her services rendered thereunder (the contract) was that the decedent, Josephine Murphy, at her death by will or otherwise (would) give to the plaintiff the whole of her estate,'' but which she failed to do and judgment for $3,915 was again prayed for. That amendment was controverted of record and under the instructions of the court the jury returned a verdict for the full amount asked in the amended petitions. Defendant's motion for a new trial was overruled, and it prosecuted this appeal, and its counsel argue a number of grounds as errors entitling their client to a reversal of the judgment, chief among which are: (1) That the verdict, necessarily finding the existence of the express contract sued on, was and is flagrantly against the evidence; and (2) that the verdict is excessive, each of which we will dispose of in the order named.

1. It will be observed that this case is not one where a stranger performed the services sued for when under no legal, moral, or other obligation to do so, and in which case the law will raise an implied contract on the part of the receiver of the benefits to compensate the performer therefor; but recovery upon no such ground is sought in this case. On the contrary, there was a close relationship between the parties involved in this litigation, and plaintiff relies, exclusively, upon an *express* contract for remuneration. In such cases the law has been uniformly declared by this court that the express contract relied on must be established by *clear* and *convincing* proof; for to hold otherwise would be the adoption of the rule whereby the door would be opened for the spoliation of estates, the voice of whose former owners is silenced by death, thus rendering it ''easy for unscrupulous persons to fabricate evidence after the death of the testator, and it is so hard to meet that character of proof, and a casual conversation, expression of intention or invitation may so easily be misconstrued and distorted into an agreement, that in the absence of such a rule (clear and convincing evidence) it would be dangerous for a person to exercise generosity or hospitality or to accept any sort of service of this character, without a thorough understanding that he was incurring no liability therefor.'' The excerpt is taken from the case of Broughton v. Broughton, 203 Ky. 692, 262 S. W. 1089, and is supported by many prior opinions, some of which are referred to in that case, but

others were and are Price v. Price's Ex'r, 101 Ky. 28, 39 S. W. 429, 19 Ky. Law Rep. 211; Armstrong's Adm'r v. Shannon, 177 Ky. 547, 197 S. W. 950; Benge's Adm'r v. Fouts, 174 Ky. 654, 192 S. W. 703; and still others referred to in those opinions.

It is unfortunate that this record did not develop the facts under which plaintiff came to live with her sister; i. e., whether she in doing so incurred any sacrifices, such as the relinquishment of an already provided home, the surrender of a lucrative commercial or industrial position, the severing of family ties, or relinquishment of any other satisfactory surroundings in order to render the needed services to her sister. Such *were* the facts in the case of DeFever's Ex'r v. Brooks, 203 Ky. 606, 262 S. W. 976, an opinion rendered by us four days before delivering the one in the Broughton case, supra. In that case the surviving sister, who made claim against the estate of her deceased one, broke up housekeeping and moved a considerable distance to the home of the deceased. It involved the surrendering of comfortable and happy surroundings, and there was nothing in the case establishing the relationship of living together for "mutual convenience" or in a family relationship. Moreover, the testimony in the Broughton case, both express and circumstantial, in support of the relied on contract, was much more convincing than that found in this case. The same doctrines announced in the cases referred to have never been departed from by this court; on the contrary, they were reiterated and referred to in the case of Bean's Adm'r v. Bean, 216 Ky. 95, 287 S. W. 239. It could serve no useful purpose to catalogue in this opinion all the cases indorsing the above-stated principles, since they are firmly established in this jurisdiction. Some of the opinions expressly hold that a mere statement by the deceased of an expectation to make compensation is not of itself sufficient under the rule, supra, to sustain a recovery based upon an express contract. However, in some of them such statements by the deceased, with other evidence showing a clear expectation on the part of plaintiff to receive payment, fortified by other circumstances clearly pointing to the existence of the contract relied on, were held sufficient to carry the case to the jury and to support a verdict for the plaintiff based upon a finding of the existence of the contract.

In this case but one witness testified to facts in support of the express contract relied on. That witness was

Mrs. William Payne, who lived at Georgetown, but who was acquainted with the deceased, and also plaintiff, her sister. She testified that in the latter part of 1920 she visited the deceased at her home for only a very short time, and while there plaintiff came into the room of deceased from the kitchen and appeared to be very warm from the effects of the high temperature, and that in the presence of the two, witness laughingly said, "You are awfully lucky, Miss Joe, to have somebody to do this for you," whereupon deceased said, "I would not have her (plaintiff) to do it unless I expected to pay her for it." Further on witness said: "She (deceased) said she expected to leave her (plaintiff) what she had and to pay her for her services;" that "no one else would stay here and do for me what she is doing." Witness says that immediately following the making of the last statements by deceased plaintiff said, "I hope you will," whereupon deceased said, "You know when I say a thing I always do what I say." Still further on in her testimony witness testified thus: "She said, 'of course I give her a little something along, but she knows that that is for a little money for stamps or something like that, I give her that all the time, but that amounts to nothing for what she does for me.' I said, 'Lands, Miss Joe, look what she does for you!' She said, 'I know it, and when I die, I expect to pay her for her services to me.' Mrs Bryan said, 'I hope you will do it;' and she made the remark that she expected to do it. I just supposed that she had left her everything; at least she said that in my presence."

The only other witness in the case who testified to any fact remotely sustaining the relied on contract was a colored boy by the name of Oscar Butler, who said that he was a student at the colored normal school, located in Frankfort, and for five years and up to within a year before the death of deceased, he worked for her during afternoons after school was adjourned for the day, which covered all the time that plaintiff lived at the home of deceased, except the last year. He was asked and answered: "Q. Now, did you ever hear Miss Murphy say anything about paying Miss Fannie, and, if so, what did you hear? A. All I heard her say was that she would pay Miss Fannie. Q. Did she tell Miss Fannie that? A. Yes, sir. Q. What did Miss Fannie say? A. Said it was all right."

The proof shows that deceased did make payments to plaintiff and she furnished all the supplies for the household, including those necessary for the board and lodging of plaintiff, and which, for all that appears in the testimony of the last witness referred to, may have been in performance of the expectation of the deceased therein testified to.

In the light of the rule prevailing in this jurisdiction and hereinbefore referred to, the testimony of Mrs. Payne, while furnishing the requisite scintilla for the submission of the issue as to whether there was a contract, as relied on by plaintiff, the peremptory instruction asked for by defendant was properly overruled, but the cases from this court are numerous to the effect that, notwithstanding the case was a submittable one under the scintilla rule, still a verdict supported only by it in the light of all the testimony in the case might be so flagrantly against the evidence as to require a reversal of the judgment therefor. The cause of action here, if any, was not a complicated one, nor was it based upon any intricate state of facts. There either was or was not a contract, the nature and character of which plaintiff knew when the original petition was filed as well as at any time thereafter, yet we find that the terms of the contract as set up in the amendments to the petition materially differ from the contract relied on in the petition. Nothing was said in that pleading about payment at death or by will, which is one of such indefinite performance and such contingent term of service as to render it improbable that it was entered into. There is nothing appearing in this case that deceased was not able to pay, at stipulated periods, to plaintiff the value of the services as they were rendered, and no reason is assigned why payment should be postponed until the indefinite period of the payor's death which might occur long after that of the payee. We will not discuss other facts and circumstances of the case, but content ourselves with saying that the facts and circumstances developed by the record clearly justify the conclusion that the verdict finding the existence of the express contract sued on is flagrantly against the evidence as measured by the rules hereinbefore referred to governing such cases.

2. The witness testifying to the value of plaintiff's service did so upon the theory that she did *all* of the nursing of deceased when nursing was necessary and that she likewise did *all* the cooking after she went to the home of

deceased. There was uncontradicted testimony that for a larger part of that time there were regularly employed cooks, but between the departure of one and the procuring of another, or at sparsely scattered times when the employed one might not appear, plaintiff did do the cooking, but her services in that respect were by no means continuous and uninterrupted; nor was her nursing of that character, since there were also employed nurses who waited upon deceased. Therefore the testimony as to the compensation of regularly employed nurses or cooks who continuously rendered such services did not accurately measure the proper compensation to plaintiff for the character of service she rendered, if the relied on contract had been sufficiently proven. We therefore conclude that the amount of recovery in plaintiff's favor was and is excessive under the proven facts, and for that reason also the judgment is erroneous. All other questions are undetermined and left open.

Wherefore the judgment is reversed, with directions to sustain the motion for a new trial and for proceedings consistent with this opinion.

Whole court sitting.