## Wise v. Goldsmith's Administrator.

.(Decided June 19, 1931.)

820

D. A. McCANDLESS and C. P. BRADBURY for appellant.

T. C. CARROLL, J. R. ZIMMERMAN, H. H. GLENN, L. A. FAUREST, H. M. DENTON and OSSO W. STANLEY for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

This is an appeal from a judgment dismissing a claim for board and nursing asserted by the appellant, Mrs. Ursa Wise, against the estate of her deceased aunt, Mrs. Bertha Goldsmith.

Mrs. Goldsmith, a widow 76 years of age, died intestate on March 23, 1927. Her estate consisted of approximately $3,000 in cash and other personalty and 170 acres of land in Bullitt county, the value of which does not appear. S. P. Smith qualified as administrator, and filed suit in the Bullitt circuit court for settlement of the estate. The case was referred to the master commissioner for the purpose of ascertaining and reporting the debts and assets of the estate.

Mrs. Wise filed the following claim supported by the required statutory proof:

"Estate of Mrs. Bertha Goldsmith in account with Mrs. Ursa Wise............Dr.

"To nursing, furnishing room, laundry, food, bedding, fuel and lights Mrs. Bertha Goldsmith, from the 30th day of August 1925 to 23rd day of March 1928 a period of 31 months @ $3.00 per day ............$2790.00."

In her accompanying affidavit she stated that the articles were furnished and services rendered to the decedent "at her special instance and request and that she promised and agreed to pay for same."

The administrator filed an answer in which he alleged that Ursa Wise was a niece of the decedent who lived in the former's home as a member of her family, and that there was no contract between them for the payment by decedent for articles and services described in the claim filed in the case. The allegations of the answer filed to the claim were traversed in a reply. The master commissioner disallowed the claim, exceptions were filed to his report, and a large amount of proof was

taken in the form of depositions. The chancellor found that the evidence was insufficient to establish a contract between Mrs. Wise and the decedent, and dismissed the claim.

It is conceded that rendering services for and furnishing board and lodging to a near relative are presumed to be gratuitous. Appellant does not rely upon an implied contract, but rests her case on the ground that a unilateral executed contract has been proven; that is, that Mrs. Goldsmith promised to pay appellant for certain acts to be performed by her, and that these acts have been performed. It is claimed that the evidence shows that the decedent promised to pay appellant for providing her with board, lodging, and nursing what these services would be reasonably worth if appellant would take decedent into her home and render the services named, and that, while no express acceptance at the time of the promise to render the services was made is proven, the acts were performed by appellant and the promise of the decedent became binding.

A brief history of the parties to the alleged contract is necessary in order to understand the relation existing between them. Mrs. Wise's mother, who was a sister of Mrs. Goldsmith, died when appellant was 18 months of age. From that time until she was 12 years of age she lived in the home of Henry Goldsmith, who had married her aunt, Emma Masden, a sister of decedent. Emma Goldsmith died when appellant was 12 years of age. She then went to the home of decedent, then Bertha Masden. Shortly thereafter Henry Goldsmith married his first wife's sister, Miss Bertha Masden, and appellant lived in their home until Henry Goldsmith's death 16 months later. After his death, Chris. Masden, a single brother of Mrs. Bertha Goldsmith, moved into her home and managed her affairs until his death in August, 1924. Appellant continued to live with her aunt, Mrs. Bertha Goldsmith, and her uncle, Chris. Masden, until she was 21 years of age, when she married Tillo Wise. She and her husband lived near the Goldsmith home, and the relations between her and her aunt continued to be cordial and friendly. After the death of Chris. Masden in August, 1924, two other brothers of Mrs. Goldsmith lived with her from time to time until August 31, 1925, when she moved to the home of appellant, where she continued to reside until her death on March 23, 1927.

Appellant, accompanied by her daughter, Mrs. Bertha Milam, went to decedent's home on Saturday,

August 29, 1925, and Mrs. Milam testified that on this occasion Mrs. Goldsmith asked appellant to take her to her home, and declared that she wanted to pay her at the same rate she would have to pay a stranger, that her nephew, Elzie Masden, owed her some money, and that she wanted to pay for the services when Elzie paid her. Herman Wise, son of appellant, who was 13 years of age when Mrs. Goldsmith moved to appellant's home, testified that he heard decedent say that she would not stay at his mother's home unless she was permitted to pay for the services rendered to her. Leonard Wise, appellant's brother-in-law, testified that he heard decedent say that she would pay appellant when Elzie Masden paid her. None of these witnesses testified that any response was made by appellant to these declarations of decedent. A number of witnesses, most of them interested parties introduced by appellees, testified to statements made by appellant and by her husband, Tillo Wise, in her presence, both before and after the death of Mrs. Goldsmith, to the effect that appellant had no contract with the decedent, and that she had no intention of charging her for board and lodging.

B. W. Masden, a brother of Mrs. Goldsmith, who was living with her when she went to the Wise home, testified that he was present when she and appellant had the conversation in regard to her moving to appellant's home, and, when he was asked what was said on that occasion, he answered:

"Well, she said this; she said she knew I could not stay with her all the time and my oldest brother was pretty near blind and could not see and she thought she would go down there and stay and I think somebody persuaded her away and I asked her the day before she went how long she was going to stay and she said, 'a while' and 'if they don't charge too much for board I will stay longer' and Mrs. Wise up and said, 'Aunt Bertha, I am not going to charge anything; your company and help will be worth a good deal to me.'" Appellant denied making this statement.

Appellant testified in full concerning conversations with, and services rendered to, her deceased aunt, but the trial judge properly sustained exceptions to so much of her deposition as detailed conversations and transactions with the decedent which were not testified to by

adverse parties. There was other incompetent evidence, as where a husband or wife of an interested party testified after his or her wife or husband had testified. While exceptions were filed to this incompetent evidence, the respective parties did not have the court rule upon the exceptions, and therefore they must be considered to have waived their objections thereto, and the evidence is before this court for consideration. Hall v. Profit, 193 Ky. 387, 236 S. W. 575; Black v. Noel's Executor (Ky.) 39 S. W. (2d) —, decided June 16, 1931.

An exhaustive discussion of the legal principles applicable where personal services have been rendered by a near relative will be found in Kellum v. Browning's Adm'r, 231 Ky. 308, 21 S. W. (2d) 459, 463. In that case it was held that, although no categorical acceptance by the niece of the promise of her aunt to pay for the services was proven, sufficient facts and circumstances were shown to warrant the inference that a contract existed and that both parties expected and understood that compensation would be made. The proof in that case of the existence of a contract between the parties was far stronger than the proof here. The relation between Mrs. Goldsmith and appellant was closer than that ordinarily existing between aunt and niece. Early in the latter's life, the former assumed the role of parent, and appellant had for her aunt all the affection of a daughter for a mother. The affection of these parties for each other appears to have continued until the death of Mrs. Goldsmith. Under the circumstances, the natural thing for appellant to do was to take her aunt into her home as a member of her family. She, above all the other relatives, should have been the natural object of her aunt's bounty, and it is unfortunate that the latter made no special provision for her, but, unless a contract between them is clearly shown, the presumption that the services rendered by appellant were gratuitous must prevail.

The rule defining the character of proof necessary to establish an express contract to pay for personal services rendered by a near relative is thus stated in Murphy's Executor v. Bryan, 230 Ky. 244, 18 S. W. (2d) 978, 979:

"It will be observed that this case is not one where a stranger performed the services sued for when under no legal, moral, or other obligation to do so, and in which case the law will raise an implied

contract on the part of the receiver of the benefits to compensate the performer therefor; but recovery upon no such ground is sought in this case. On the contrary, there was a close relationship between the parties involved in this litigation, and plaintiff relies exclusively upon an express contract for remuneration. In such cases the law has been uniformly declared by this court that the express contract relied on must be established by clear and convincing proof; for to hold otherwise would be the adoption of a rule whereby the door would be opened for the spoilation of estates, the voice of whose former owners is silenced by death."

The testimony here does not measure up to the requirements of the above rule. The evidence is not clear and convincing that the minds of the parties met and that they expected and understood compensation would be made. While appellant's son and daughter and a brother-in-law testified that the decedent expressed an intention to pay appellant for the services rendered by her, there is no intimation that appellant acted on the assumption that she was to be compensated. On the contrary, there is much testimony that she did the natural thing under the circumstances and rejected her aunt's offer of compensation. As said in Kellum v. Browning's Adm'r, supra: "In establishing a contract by inference, the facts and circumstances must be sufficient to clearly and convincingly manifest or prove a mutual assent of minds to enter into the contract sought to be implied or established." Mrs. Goldsmith lived in appellant's home from August 31, 1925, until her death on March 23, 1927, and during that time had ample means to pay her obligations. At the time of her death, she had more than $1,300 in cash in her trunk, and owed no debts, except one for $15 for medical services incurred during the last few days of her life. It is argued that she was to pay appellant when her nephew, Elzie Masden, paid her money for which he was indebted to her, but the amount of Elzie Masden's indebtedness to her is not shown, but it does appear that he paid her $50, and no part of this was paid to appellant.

Counsel for the respective parties are not in disagreement concerning the law applicable to the facts. They merely disagree in regard to the weight to be given to the proven facts and circumstances. The chancellor found that appellant's proof that there was an express

contract was insufficient to overcome the presumption of gratuitous service, and we are of the opinion that the weight of the evidence sustains his finding.

Wherefore the judgment is affirmed.

Richardson, J., not sitting.