## Thompson v. Close.

Dec. 8, 1939.

Faurest & Faurest for appellant.

J. R. Layman and L. B. Handley for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

J. T. Beams died intestate a resident of Hardin County, Kentucky. On March 27, 1937, following his death, the appellant, H. H. Thompson, was appointed and qualified as his personal representative. Decedent left surviving him only his widow and some collateral heirs, and at his death he owned a one-half undivided interest in a small farm situated in Hardin County, worth about $2,000, his surviving widow owning the other half. He left no personalty of consequence and was indebted in only a small aggregated amount independent of the claim of appellee, Stanley Close. The administrator filed this settlement action in the Hardin circuit court against all of decedent's known creditors and all of his known collateral heirs, one of whom was and is the appellee. The cause was referred to the Master Commissioner to ascertain and report debts and assets. Among the claims filed with him was that of appellee, amounting to $750, which the Commissioner declined to approve, but reported it to the court for determination. Appellee filed exceptions to the report of the Commissioner because the latter had in effect rejected his claim; whereupon the court heard parol testimony and allowed the claim to the extent of $500, and adjudged a lien in favor of appellee on decedent's one-half undivided interest in the farm, and if it did not realize enough to pay appellee's claim, then a lien was declared on the widow's undivided one-half to secure the balance—all of which the Commissioner was ordered

and directed to enforce in the manner set out in the judgment.

This appeal is prosecuted by the administrator, and three grounds are urged for a reversal: (1) The proof was insufficient to establish the claim which was denied; (2) that if the court should conclude otherwise (as it did) then the claim had been settled by decedent before his death, and (3) that in any event the claim was barred by limitations. We have reached the conclusion that ground (1)—if not also ground (2)—is meritorious, and which renders it unnecessary to discuss, determine or even refer to other questions in briefs including No. 3 involving the defense of limitations. We will, therefore, confine the discussion to grounds (1) and (2) in the order named.

1. The admitted facts are: That on and prior to 1924 decedent was a single man of more or less advanced age, but whether a bachelor or a widower is not disclosed by the record. However, he neither then nor thereafter had children. He took up his abode with his nephew, the appellee, who lived with his family on a farm in Hart county, where he continued to reside for something like three years, at the expiration of which time he married the woman who survived him as his widow, and immediately left the home of the appellee. He then purchased the farm of which he died seized, and upon which he and his wife took up their abode. He later conveyed the farm to a man by the name of Burba in consideration of the vendee agreeing and promising to deliver to him and his wife one-third of the produce grown on the farm by Burba or his tenants throughout the lives of vendor (Beams) and his wife, if she should survive him. That arrangement lasted but a comparatively short time, when Burba and wife reconveyed the farm to Beams and his wife jointly, and which was the status of the title at the time of decedent's death.

While appellee's claim was proven and filed with the Commissioner, as stated, his pleading, in the nature of exceptions, set out the facts upon which it was based and was in the nature of an answer and cross petition, though styled "answer and counterclaim." He alleged therein the fact supra of decedent occupying his home for about three years, beginning in 1924 and ending in 1927, and averred that he "agreed to compensate the said Stanley Close, it being the agreement, understanding and intent of both the said Stanley Close and the

said J. T. Beams that such compensation should be reasonable for the services performed and the things and foodstuff furnished to him pursuant to said agreement, and that he should be compensated therefor out of the estate of the said decedent at the time of his death." That alleged express agreement was denied, thus casting the burden on appellee to prove it. In discharging that burden he proved that decedent executed a will some time before his marriage to his surviving widow in which he devised and bequeathed—outside of a few insignificant sums—his entire property to the appellee, Stanley Close, and which document was duly presented for probate after his death; but it was rejected on the all-sufficient ground that the testator's marriage after executing the paper operated to revoke it. See Kentucky Statutes, Section 4832.

Appellee then introduced in his behalf a neighbor, Raymond Lobe, who stated that he lived near the home of appellee during the period of decedent's residence therein, and that at some time during that period he heard decedent say that "he was going to have papers fixed so Stanley could have something for taking care of him." He further stated that he heard decedent say that he was not then paying appellee "but that it was his intention that Close (appellee) should be compensated therefor." One Buford Lobe, who was a similarly situated neighbor, was next introduced by appellee and he testified that on an occasion during decedent's occupancy of appellee's home the former told him that "his board was not costing nothing now, but that he was aiming for Stanley to get paid for it in the long run; * * * that it (his support and board) wasn't costing him anything at present, but he had a will made that he aimed for Close to have what he had at his death." The next witness was Lawrence Close, one of the children of appellee, who said that decedent stated while occupying appellee's home (no definite time given) "that he wanted Stanley to have what he had when he died." Those witnesses were all who testified on the existence of the agreement relied on, the claim seeking to recover 75 cents per day for the time decedent jointly occupied appellee's home with the latter's family in the manner stated.

It will be seen that the claim is bottomed upon an express contract with no effort at reliance on an implied one, and the question to be determined is whether

the recited proof is sufficient to sustain the alleged express agreement. Section 2178 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes is not applicable to the facts as presented by the record, since it provides for a situation similar to this where the claimant for board, diet, etc., had no agreement with the recipient thereof for compensation. Here, such an agreement is asserted and relied on. If proven, the agreement would be enforced as made, but if not proven, then that statute bars any right of recovery.

The firmly settled rule in this and other jurisdictions, as well as by standard text writers, is that in the absence of direct and specific expressions embodying an express agreement to pay for services of the kind and character here involved the substituted circumstances necessary to establish the express agreement must be clear and convincing that such an agreement was made, and that casual or indefinite expression of an intention to pay, even by the execution of a will, are not sufficient. That well settled principle of law will be found to be so declared in our opinions rendered in the cases of Reynolds' Adm'r v. Reynolds, 92 Ky. 556, on page 563, 18 S. W. 517; Price v. Price's Ex'r, 101 Ky. 28, 39 S. W. 429, 19 Ky. Law Rep. 211, on page 213; Lucius' Adm'r v. Owen, 198 Ky. 114, 238 S. W. 495; Marshall v. Ireland, 228 Ky. 354, 15 S. W. (2d) 289; Murphy's Ex'r v. Bryan, 230 Ky. 244, 18 S. W. (2d) 978; Kellum v. Browning's Adm'r, 231 Ky. 308, 22 S. W. (2d) 459; Wise v. Goldsmith's Adm'r, 239 Ky. 819, 40 S. W. (2d) 345; Springer v. Springer's Ex'x, 262 Ky. 121, 89 S. W. (2d) 624; and Adams' Adm'rs v. Adams, 264 Ky. 543, 95 S. W. (2d) 31. The "clear and convincing" proof required by the approved rule was adopted for the purpose of protecting estates of deceased persons against fraudulently asserted claims after death or against non sui juris individuals, and it will be seen from our opinions supra that we have undeviatingly adhered thereto.

It would be a work of supererogation to take up each of the cited cases and recite their facts upon which this court reached the conclusion that the asserted claim as based upon the alleged express agreement was unproven. We will, therefore, make specific reference to only the Reynolds and Murphy cases, the facts as to the others being available to the reader by consulting the opinions. In the Reynolds case [92 Ky. 556, 18 S. W. 518] a daughter asserted a claim based upon an alleged

express agreement against the estate of her deceased father, but her proof was held insufficient, notwithstanding she did show that the father said on more than one occasion "that she should be well paid," and that "he intended to provide for her," and other similar expressions from him, but which we held were insufficient to establish the express contract relied on. However, that case was where the claimant was a daughter of the decedent against whose estate the claim was asserted, but she had long since arrived at age and was no longer under parental control as an infant. In the instant case, however, the record clearly discloses that appellee was a favorite nephew of the deceased J. T. Beams, and—at least to a degree—affectionate relations bound the two together, even though not to the extent possibly as is true between parent and child.

In the Murphy case the claim was made by a sister of decedent for services performed to the deceased sister while occupying the same household. It was based on an express contract for payment, as is also true here. Similar expression by the decedent, short of an express promise, were proven in that case, and they were more convincing towards upholding the alleged agreement than those appearing in this one. We cited therein and quoted from a number of other domestic cases in addition to those listed above. Recognizing the rule supra, we said [230 Ky. 244, 18 S. W. (2d) 979]: "In such cases the law has been uniformly declared by this court that the express contract relied on must be established by clear and convincing proof; for to hold otherwise would be the adoption of the rule whereby the door would be opened for the spoliation of estates, the voice of whose former owners is silenced by death."

We continued by quoting from our prior opinion in the case of Broughton v. Broughton, 203 Ky. 692, 262 S. W. 1089, in which we said that a contrary rule would render it "easy for unscrupulous persons to fabricate evidence after the death of the testator, and it is so hard to meet that character of proof, and a casual conversation, expression of intention or invitation may so easily be misconstrued and distorted into an agreement, that in the absence of such a rule (clear and convincing evidence) it would be dangerous for a person to exercise generosity or hospitality or to accept any sort of service of this character, without a thorough understanding that he was incurring no liability therefor." The proof in

that (Murphy) case showed that decedent while alive and in the course of discussing the services being rendered to her by her sister, the claimant, after her death said: "She (deceased) said she expected to leave her [claimant] what she had and to pay her for her services;" whereupon claimant said: "I hope you will," to which deceased replied: "You know when I say a thing I always do what I say." Later on the witness said that decedent stated in the same conversation that "When I die I expect to pay her [claimant] for her services to me" whereupon claimant again remarked, "I hope you will do it."

We noted in that opinion that there was nothing appearing in the record showing that decedent was unable financially to make payments for services upon which the claim was based, just as is true in this case, since nothing appears to show that J. T. Beams was unable to make periodical payments throughout his occupancy. On the contrary it expressly appears that he purchased at or about the time he left appellee's home the farm in question, and it does not appear that he went in debt in doing so. We said in the Murphy case—and which is pertinent to this one—that "no reason is assigned why payment should be postponed until the indefinite period of the payor's death which might occur long after that of the payee." We concluded that the evidence, as so received in that case, was insufficient to sustain the claim and reversed the verdict of the jury finding otherwise, on the ground that it was flagrantly against the evidence. The proof of the claim asserted in this case was heard by the court sitting as a chancellor, whose findings of fact are governed by a different rule than that of a jury's verdict, and which this court reviews as if on a de novo hearing, i. e., if we are convinced that the finding, though supported by some substantial evidence, has not been proven by a preponderance of the proof (circumstantial as well as express) the finding of the chancellor will be reversed. Differently stated, the rule in such cases is, that if we on appeal entertain no more than a doubt as to the accuracy of the chancellor's finding his conclusions will be undisturbed, but if we entertain more than a doubt of the accuracy of his findings we have the authority and it is our duty to follow our own conclusions and to determine the case accordingly.

In this case the most that the testimony shows is

that decedent, J. T. Beams, felt grateful to his nephew for what the latter was doing for him, but he expressly stated that it was costing him nothing; however, he intended for his nephew to be paid "in the long run," and that he had carried out that intention by executing his will. There is nothing in all of the testimony to show that appellee accepted and undertook the performance of the alleged agreement on the alleged terms other than the fact of performance, nor is there a scintilla of evidence to show that he expected remuneration. To hold under the evidence of this case that an express contract was proven would, in our opinion, utterly ignore the salutary rule supra, and thereby open the door for the admission of the evil which it was intended to prevent.

2. Witnesses, Marcus Berry, Eva Berry and Dorothy Rogers—the first two being husband and wife—testified that after the decedent married, had purchased his farm and while he was living upon it, they were at his house when the appellee was present and the latter paid to him some money, saying to deceased at the time: "Neither of us now owes the other anything." The witness Rogers was then nursing the decedent whilst Mrs. Berry was his niece. That testimony is undenied and it must be acknowledged that it goes far toward establishing ground (2) urged in defense of the claim. But, inasmuch as we have determined that ground (1) is meritorious, it becomes unnecessary to further discuss or to finally determine ground (2) and for which reason we will not undertake it.

Wherefore, for the reasons stated, the judgment is reversed, with directions to disallow all the claim of appellee, and to dismiss his pleading attempting to assert it, and for other proceedings not inconsistent with this opinion.